368 So.2d 994 (1979)
MARATHON PIPE LINE COMPANY
v.
Mrs. Charlie Holcombe PITCHER.
No. 62768.
Supreme Court of Louisiana.
March 5, 1979.
Rehearing Denied April 9, 1979.
Ashton L. Stewart, Stewart & Preis, Baton Rouge, for defendant-applicant.
Thomas R. Blum, Ralph L. Kaskell, Jr., Deutsch, Kerrigan & Stiles, New Orleans, for plaintiff-respondent.
SUMMERS, Chief Justice.[*]
Marathon Pipe Line Co. instituted this expropriation proceeding to obtain a 20-foot permanent servitude for a petroleum pipeline along a pipeline corridor in East Baton Rouge Parish. Defendant Charlie Holcombe Pitcher, who owns property which the pipeline will traverse, resisted the taking. She contends that Sections 1-14 of Title 19 and Sections 251-254 of Title 45 of the Revised Statutes, under which plaintiff claims the right of expropriation, are unconstitutional in contravention of Section 4 of Article I of the Constitution of Louisiana. Alternatively, defendant alleged the servitude should be limited in certain respects and that substantial severance damages should be awarded in addition to the *995 award for the servitude expropriated and for attorney's fees.
It is defendant's contention that her 35-acre tract of land to be traversed diagonally by the pipeline is located within the city limits of Baton Rouge and is surrounded by newly developed and built-up residential subdivisions. The highest and best use of her property is said to be for development as a residential subdivision. Installation of the pipeline would therefore impede the construction of a necessary access road to a residential subdivision planned to be developed on her property.
Constitutionality of the statutes was upheld in the trial court and defendant was awarded $5,074.50 as compensation for the servitude expropriated, and $10,000 for severance damages, plus costs and attorney's fees.
In adjudicating the servitude to plaintiff the trial judge, as suggested by Marathon in its petition, imposed this obligation:
"[I]n the event defendant, or her successor in title, constructs the street described hereinafter across plaintiff's pipeline, and it is necessary for plaintiff's pipeline to be encased or otherwise protected to permit construction of said street, such encasement or protection shall be accomplished at the expense of plaintiff, Marathon Pipe Line Company, provided, however, that plaintiff shall be required to accomplish such encasement and protection (a) only if the street constructed by defendant is an extension of East Parnell Avenue from Sherwood Forest Subdivision, Thirteenth Filing, directly across Flannery Road into her property, and then only to the extent necessary to permit construction of a street with a right-of-way sixty (60') feet in width."
In the Court of Appeal the judgment was affirmed. 361 So.2d 314. Defendant applied to this Court for a review of this judgment, contending that it was error to permit the expropriation without requiring the full payment of compensation for the taking in money. Certiorari was granted. 362 So.2d 787.
In her presentation to this Court defendant explains that the trial and appellate courts employed an erroneous basis for fixing the amount of compensation to which she is entitled. Those courts reduced the market value of defendant's property by the amount required to encase the pipeline where the street would cross, instead of awarding the amount necessary to complete the encasement as part of the compensation due the landowner. The stipulated cost of encasement was $19,394.10. This amount, defendant claims, should have been awarded to her at the time of the taking in addition to the $15,074.00.
From the testimony and exhibits on file it is evident that the highest and best use of defendant's property is for development as a residential subdivision. Development of such a subdivision will require a street leading from the public road into plaintiff's property. To properly develop plaintiff's property as a residential subdivision the street will have to traverse plaintiff's pipeline, and it will be necessary to encase that pipeline. The cost of the encasement at the time of the taking was stipulated to be $19,394.10. These facts establish that the cost of encasement is a "damage" to defendant's property which affects its present market value. The diminution in value is "damage" for which compensation is due. The sole question, then, is whether that damage should have been compensated to defendant in money prior to the taking or whether the court properly imposed an obligation on the pipeline company to encase the pipe "in the event defendant, or her successors in title, construct the street" and "it is necessary for plaintiff's pipeline to be encased."
Aside from the fact that two contingencies are made part of defendant's obligation to encase the pipe, there is little doubt that the laying of the pipeline across defendant's property does affect its market value. And that effect is due to the reasonable certainty that in order to put the property to its highest and best use a street will be required and it will be necessary to encase the pipeline.
*996 Dakin and Klein in Eminent Domain in Louisiana at page 96 considered this question, saying:
"Every parcel of land is presumed to have a single use which is its most economically profitable. It is this premise which the courts and the appraisers mean to convey when they use the term `highest and best use'. Not infrequently, a partial expropriation of or a public improvement on an adjacent property has the effect of destroying the highest and best use of a parcel, thereby resulting in injury quite measurable in dollars and cents. In calculating the compensation, the courts are first concerned with determining what is and was the highest and best use of the land and the remainder. The rule here is that the highest and best use of the remainder is the point of interest, and it is to be determined immediately before and immediately after the taking."
Because of its limited adaptation as a residential subdivision the market value of the property suffers whether a street is constructed over the pipeline or not. It is the impediment created by the pipeline which creates the diminution in value. This diminution in value is not therefore compensated under the obligation imposed upon plaintiff by the Court of Appeal "in the event defendant, or her successors in title, construct the street." Such a contingency, which may or may not occur, is one the fulfillment of which requires that Marathon Pipe Line Company be in existence and be the owner of the pipeline when the obligation to encase becomes executory. This is so for there is no obligation imposed upon Marathon's successors or assigns. Added to this uncertainty is a further condition that encasement will depend upon whether "it is necessary for plaintiff's pipeline to be encased." This leaves open for future controversy and litigation the question whether encasement of the pipeline is then necessary.
In general terms the Fifth Amendment to the United States Constitution embodies as part of its due process guarantee the principle that "private property [shall not] be taken for public use, without just compensation."
Section 4 of Article I of Louisiana's Constitution contains more detailed protections for the owners of private property. In this State every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. The Constitution guarantees that "Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner . . . ."
Plaintiff, a private entity, claims the right to expropriate as the owner and operator of pipelines for the transmission or transportation, as a common carrier of petroleum, petroleum products and petroleum by-products. As such their rights are governed by the constitutional principles quoted and by Sections 1 through 14 of Title 19 and Sections 251 through 254 of Title 45 of the Revised Statutes.
These enactments implement the protections set forth in Section 4 of Article I of the Louisiana Constitution. The latest amendments were designed to become effective on the effective date of the new Constitution. It is implicit in these statutes that they carry out the letter and spirit of Louisiana's Constitutional Article on expropriation.
Section 2(8) of Title 19 authorizes common carrier pipelines to expropriate servitudes. A petition for expropriation is required by Section 2.1 to conclude with a prayer that the property be adjudicated to the plaintiff with just compensation "paid" to the owner. Section 7 sets forth that failure of the property owner to file his answer timely constitutes a waiver of all defenses to the suit except claims for "money" as compensation for the property sought to be expropriated and claims for "money" as damages to other property.
Expropriation cases are tried before the court without a jury, except that a party shall have the right to trial by jury to determine compensation. Id. § 4. When the trial judge decides in favor of the expropriating *997 authority, if a jury is requested one is thereafter empaneled to determine the measure of compensation. When compensation is determined the plaintiff shall, upon motion of defendant, present evidence as to the "highest amount" it offered defendant prior to trial. The court shall then determine the "highest amount" offered. If the "highest amount" offered is less than the compensation awarded, reasonable attorney's fees may be awarded. The expropriating authority shall not be entitled to possession or ownership of the property until a final judgment has been rendered and "payment" has been made to the owner or "paid" into the registry of the court. Id. § 8.
After trial to determine compensation the court shall render judgment against plaintiff in the "amount" of the compensation determined to be due the owner. Id. § 8(C).
"Payment" by plaintiff to the owner of the compensation fixed in the final judgment to be due or the deposit thereof in the registry of the court for the benefit of the persons entitled thereto entitles the plaintiff to the property rights described in the judgment of expropriation. Id. § 10.
When property encumbered with mortgages or privileges is expropriated the property passes to the person expropriating free and clear of all encumbrances. Amounts awarded for the expropriation "shall be paid" into the court and distributed to the mortgage and privileged creditors. Id. § 11.
"If a tender is made of the true value" of the property to the owner before proceeding to expropriation, the cost of the expropriation shall be paid by the owner. Id. § 12.
It would be difficult to conclude that the obligation to encase the pipeline, which the Court of Appeal imposed upon plaintiff, can be considered as compensation "paid" for the damage to defendant's property as required by Sections 1 through 14 of Title 19. These sections have been paraphrased with quotations of significant language material to the issue at hand.
The very prayer of the petition for expropriation mandated by Section 2.1 makes expropriation contingent upon compensation "paid" to the owner. An obligation upon the expropriating authority to undertake an encasement of the pipeline at some uncertain future date if encasement is "necessary" is hardly a fulfillment of the mandate of Section 2.1. Nor can such an obligation on the expropriating authority be considered a satisfaction of defendant's claim for "money" as compensation for the property sought to be expropriated or claims for "money" as damages to other property as contemplated in Section 7.
Just as an obligation to encase cannot be considered "money" within the contemplation of Section 7, such an obligation cannot be within the contemplation of the "highest amount" standard or the "payment" required to be made prior to the taking as set forth in Section 8. To the contrary, an obligation to perform encasement of a pipeline at some indeterminate future date could not fulfill the requirement that compensation be paid prior to the expropriation.
When Section 8(C) requires that the "amount" of compensation be determined it refers to the "amount" in "money", not an obligation to perform a future encasement of a pipeline. See also reference to "amount" in Sec. 9.
The prior "payment" of compensation to which defendant is entitled before plaintiff may take possession of the property rights in the adjudication referred to in Section 10 is not accomplished by an obligation to encase a pipeline at a future date if necessary.
How can the holders of mortgages and privileges be "paid" from the compensation awarded in an expropriation if that compensation is in the form of an obligation to encase a pipeline at a future uncertain date "if necessary"? The answer is that payment of those creditors could not be accomplished under those circumstances and that Section 11 does not contemplate payment of compensation in an expropriation proceeding in any medium other than money.
*998 A "tender" of the "true value" of the property before expropriation is likewise virtually impossible except by a tender of money and such is the intent of Section 12.
Implementation of the constitutional guarantee, then, means that property shall not be taken or damaged by private entities authorized to expropriate except for a public and necessary purpose and unless compensation is paid in money prior to the taking. For courts to adjudicate the forced taking of private property otherwise would be to disregard the clear and unequivocal language of Sections 1 through 14 of Title 19 of the Revised Statutes. By disregarding the Legislature's clear intent and meaning, courts would render those provisions of the law inoperable. Owners would find themselves divested of their property without just compensation and, as in this case, faced with the prospect of further litigation and turmoil brought about by efforts of the courts to fashion remedies contrary to those prescribed by statute.
Louisiana's Constitution and this Court have long recognized that private property could not be taken or damaged except for public purposes and "after" just and adequate compensation is paid. La.Const. art. I, § 2 (1921); La.Const. art. 167 (1898); La.Civil Code art. 2629; State v. Phares, 245 La. 534, 159 So.2d 144 (1964); State Through Department of Highways v. Macaluso, 235 La. 1019, 106 So.2d 455 (1958); Charles Tolmas, Inc. v. Police Jury, 231 La. 1, 90 So.2d 65 (1956); DeBouchel v. Louisiana Highway Commission, et al., 172 La. 908, 135 So. 914 (1931); Bickham v. City of Shreveport, 156 La. 648, 101 So. 8 (1924). The principle is derived from the Code Napoleon, article 545. Aubrey & Rau, § 193; Planiol, Vol. 1, No. 2443; Nichols, The Law of Eminent Domain § 8.713 (3rd ed. 1950).
The principle that compensation for taking property by expropriation must be a "price" in money has been equally well-settled in Louisiana. La.Const. Art. I, § 2 (1921); La.Civil Code arts. 497, 2633-34; Louisiana Power & Light Company v. Lasseigne, 256 La. 919, 240 So.2d 707 (1970). And while the jurisprudence of this State formerly permitted a setoff from the damages to the remaining land, based upon the benefits to be derived from the contemplated improvements, this rule apparently has been abolished by Section 9 of Title 19 of the Revised Statutes. The present concept requires that "The owner shall be compensated to the full extent of his loss."
Generally it is held that compensation means a full indemnity or remuneration for the loss or damage sustained by the owner of property taken or injured for public use; and just compensation means the full and perfect equivalent in money of the property taken whereby the owner is put in as good a position pecuniarily as he would have been had his property not been taken. State Through Department of Highways v. Mason, 218 So.2d 329 (La.App.1968), affirmed 254 La. 1035, 229 So.2d 89 (1969); Gulf States Utilities Company v. Norman, 183 So.2d 421 (La.App.1966); State Through Department of Highways v. Poulan, 160 So.2d 387 (La.App.1964); Woodworth v. Commonwealth, 353 Mass. 229, 230 N.E.2d 814 (1967); Michigan Consolidated Gas Co. v. Muzeck, 8 Mich.App. 329, 154 N.W.2d 667 (1967); State Commissioner of Transp. v. Township of South Hackensack, 65 N.J. 377, 322 A.2d 818 (1974); 29A C.J.S. Eminent Domain § 96.
Although the means by which compensation is to be paid is seldom prescribed in the constitutions, it is generally held that it must be in money. Vanhorne's Lessee v. Dorrance, 2 Dall. 304, 1-L.Ed. 391 (U.S. 1795); Sittenfeld v. Tobriner, 148 U.S.App. D.C. 113, 459 F.2d 1137 (1972); Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 277 A.2d 873 (1971); 27 Am.Jur.2d, Eminent Domain § 265.
On the basis of this record and the authorities set forth, it is the Court's conclusion that defendant should have been compensated by the payment of the additional stipulated cost of encasing the pipe before the taking and in money, not by imposing a conditional obligation on the plaintiff to encase the pipe.
*999 For the reasons assigned there is judgment in favor of defendant and against plaintiff in the full and true sum of $19,394.10, plus interest from the date of the adjudication of the servitude to plaintiff until paid and for all costs.
TATE, J., dissents and assigns reasons.
MARCUS and DENNIS, JJ., dissent for reasons assigned by TATE, J.
TATE, Justice, dissenting.
I respectfully dissent. I would affirm the decision of the trial court and of the court of appeal. 361 So.2d 314 (La.App. 1st Cir. 1978).
At issue is the possible diminution of the value of property left after the taking, i. e., severance damages. The issue is the potential damage that might be caused, if a public street is ever built over the pipeline in the course of subdivision development of the affected remaining property.
The trial court recognized the problem of providing compensation for this contingency as including speculative possibilities: if a street is ever built; just where its location might be, if ever actually built; actual (increased or decreased) cost of encasing the pipeline at some time in the future, if and when and where required; the effect of a present local governmental regulation, which may require the owner of the pipeline, in any event, to encase the pipeline if a street is ever constructed (and the possibility that an ordinance to this effect may be changed); etc.
However, rather than denying or diminishing (as speculative) severance damage of the nature sought, the trial court (rather sensibly, I thought) protected the interest of the landowner by requiring future encasement of the pipeline at a street crossing, if such ever actually becomes necessary because of construction of a street. The imposition of an affirmative duty upon the taker to alleviate or prevent severance damage, in lieu of a monied award to the person whose property has been taken, has been approved in a number of instances in our past. See Dakin and Klein, Eminent Domain in Louisiana, p. 85 (1970), citing, e. g., Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (1910) (building crossings, fences, drainage ditches, etc.) and United Gas Pipe Line Co. v. New Orleans Terminal Co., 156 So.2d 297 (La.App. 4th Cir. 1963). (encasing pipeline at three railroad crossings).
The majority's scholarly opinion has forcefully stated opposing considerations. Nevertheless, I respectfully suggest that the constitutional requirements that the landowner's property may not be taken or damaged except "with just compensation paid" has here been met by actual payment here in money for the value of the property actually taken (market value of property taken) and damaged (severance damages awarded for present loss in value of remainder of tract through construction of a pipeline).
I do not believe that the constitutional provision was intended as a straitjacket to require, as to future damage that might occur, either the rejection of an award as speculative or else a guess at the monied award that might be required.
In my judgment, the court of appeal was correct in affirming the trial court's conditional award, by way of an affirmative duty on the taker to encase its pipeline if ever required, so as to obviate any severance damage of the nature feared, if and when it arises in the future.
The provision of our constitution that an owner "shall be compensated to the full extent of his loss", La.Const. Art. 1, Section 4 (1974), does not seem to me to require that the taker must pay the owner in cash for losses which have not occurred and which may never occur. In the absence of such a constitutional requirement, in my opinion the trial court's provision that the pipeline be encased by the taker (if and when and where a street is built) is not prohibited by law and is within the sound discretion of the trial court as a sensible and adequate protection of the landowner's interests rather than deny any severance damage to him (her) at all (on the ground *1000 that none is proved to be reasonably certain to occur), the trial judge assured that the severance damage would be avoided If ever the potential contingency causing it in fact occurred.
NOTES
[*] Chief Judge James E. Bolin participated in this decision as Associate Justice Ad Hoc sitting in the place of Chief Justice Sanders, retired.