392 So.2d 490 (1980)
STATE of Louisiana
v.
Al J. RANSOME et al.
No. 13578.
Court of Appeal of Louisiana, First Circuit.
October 6, 1980.
*491 G. William Jarman, Baton Rouge, for plaintiff-appellee, State of Louisiana.
Leon Gary, Jr., Baton Rouge, for defendant-appellant, Noel Gilbert and Robert A. Westerlund GRW Investments.
James D. Caldwell, Baton Rouge, for defendant-appellant, Al J. Ransome.
Before ELLIS, COLE and WATKINS, JJ.
WATKINS, Judge.
This is an expropriation suit brought by the State of Louisiana against Al J. Ransome, Noel Gilbert, Robert A. Westerlund and GRW Investments, a Louisiana partnership, to expropriate property on Highland Road in Baton Rouge lying immediately south of the "I-10" exit ramp. The suit was filed under LSA-R.S. 19:1-14. No answers were timely filed. Hence, the sole issue before the trial court was the amount *492 of compensation. The trial court awarded defendants the amount of $215,553.60, plus $5,000.00 attorney's fees, and costs. Defendants appeal, seeking an increase in the amount awarded. We affirm.
The trial court's written reasons for judgment are well stated, and we adopt them as our own:
"The State of Louisiana filed an expropriation suit on July 18, 1979, against Al J. Ransome, Noel Gilbert, Robert A. Westerlund and GRW Investments, a Louisiana partnership domiciled in East Baton Rouge Parish, composed of Ransome, Gilbert and Westerlund, hereafter called Owners, seeking to expropriate Lot 7, Square 259, Suburb Swart and Square C, Suburb Swart, located in the Parish of East Baton Rouge, Louisiana, for the location of a vocationaltechnical educational facility. Sherman A. Bernard, Commissioner of Insurance, as rehabilitator of First Republic Life Insurance Company, was made a party defendant by supplemental petition filed on August 16, 1979.
The suit was filed in accordance with LA-R.S. 19:1-14. No answers were timely filed, therefore, the sole issue before this Court is, what compensation is owing to the Owners. R.S. 19:5.
The property sought to be expropriated was previously owned by Pike Burden, who conducted a printing business on Square C & used Lot 7 as a parking lot. The property is located south of Myrtle Street, Baton Rouge, Louisiana, and is defined as:
Lot 7, Square 259, measures 60 feet on Julia Street and 120 feet on St. Charles Street, being a corner lot consisting of 7,200 square feet.
Square C measures 335.5 feet on Highland Road, 332.95 feet on the south side of Julia Street, 300 feet on the west side of Royal Street and 183.6 feet on the north side of Terrace Street, constituting 77,442.3 square feet. Located on Square C is a masonry building of approximately 8720 square feet and a metal building of 1800 square feet.
The law provides that property shall not be taken by the state except for public purposes and with just compensation paid to the owner. In considering just compensation it is necessary to consider the highest and best use of the property. Section 4 of Article 1 of Louisiana Constitution, Marathon Pipe Line Company v. Pitcher, 368 So.2d 994 (La.1979).
Plaintiff's appraisers consisted of J. Russell Doiron, (MAI) and Thomas Dupree (MAI).
Mr. Doiron issued a primary appraisal on May 1, 1979, to the Facility Planning and Control Department wherein he stated the subject property has an estimated market value of $180,000. In this primary report he made mention of a conversation with Richard Erbland, commercial loan officer of Louisiana National Bank, and Officer of Margate Corporation, a wholly owned subsidiary of Louisiana National Bank. Mr. Erbland (Exhibit D-1) valued the subject property from $150,000 to $200,000. Subsequently Mr. Doiron submitted a final appraisal report dated July 20, 1979, wherein he valued the property at $150,000. His estimate for this valuation was based on a market comparison approach wherein he used the past three sales of the subject property. These sales consisted of:
(1) Sheriff's sale of the subject property wherein it was valued at $125,000 by appraisers appointed in accordance with law;
(2) Sale from Louisiana National Bank, who acquired the property at the Sheriff's sale, to Margate Corporation. Inasmuch as Margate Corporation is a wholly owned subsidiary of Louisiana National Bank, he did not consider the sale as an `arms-length' sale, and
(3) Sale from Margate Corporation to G.R.W. Investments' present owner, dated April 19, 1979, for $150,000.
It was Mr. Doiron's opinion that since the first and third sales exposed the property to the open market within a five month period, the latter sale constitutes the true estimate of the subject property.
Mr. Dupree estimated the value of the subject property by three methods, the cost *493 approach to value, the income approach to value and the market data approach to value. Each of these approaches required the appraiser to determine the square footage value of the subject property. In determining land value, Mr. Dupree used the following comparables in the immediate area;
(1) Witter-Lipsey properties located west of the subject property and containing 53,585 square feet. This property, zoned M-2, was sold by George Patton Waters to Witter-Lipsey on August 2, 1979, for $79,000, which yielded a price of $1.47 per square foot.
(2) B. L. Miller property located north of the subject property and containing 4,469 square feet. This property, zoned A-4, was sold by Drometal Construction, Inc., to B. L. Miller on May 1, 1979 for $6,000 which yielded a price of $1.37 per square foot.
(3) A land purchase contract on Lot 3, Square A, Suburb Swart wherein the sale is to be passed by February 1, 1980, which is zoned M-1 and will yield $.72 per square foot.
(4) A land lease by Werner & Stower to Michael Wayne Morrison on Lot 5, Square 259, Suburb Swart which is leased for 24 months at $175.00 per month.
Mr. Dupree testified that the Witter-Lipsey sale was the best comparable and because the subject property is located on Highland Road, he valued the subject property at $2.00 per square foot.
In his cost approach to value, Mr. Dupree valued the present improvements at $44,769.00, miscellaneous improvements, as walks, drives, etc., at $1500.00 and the land (84,642.3 square feet @ $2.00 per square foot) at $169,300.00, for a total value of $215,000.00 (See Exhibit P-12, page 20-23).
The income approach to value resulted in an evaluation of $212,700.00. (See Exhibit P-12, page 24-25). The market data approach to value resulted in an evaluation of $207,400.00 (See Exhibit P-12, page 26 & 27). Mr. Dupree testified the highest and best use of the property was for warehouse buildings, as constructed by Witter-Lipsey on property adjacent to the first comparable.
Defendant's appraisers, John LeJeune and Kermit Wayne Williams, values ranged from $416,287.00 to $451,400.00.
Mr. LeJeune stated that the subject property's highest and best use would be for the development of a multi-story office building. This opinion was based on the current growth of downtown Baton Rouge which is attributed to the Governmental Complex located north of the subject property. He reasoned that the area of the subject property will develop more rapidly in the future due to the availability of land in the surrounding area. He further stated that in his opinion, the improvements needed to be removed from the premises in developing, therefore, the improvements were of no value. He fixed the value of the property at $5.00 per square foot in Square C and $2.50 per square foot in Lot 7.
Mr. LeJeune used comparables in arriving at his value. These comparables were:
(1) 451 Florida Corporation acquisition of the entire block bounded by Florida Blvd., Laurel Street, North 4th Street and North 5th Street, for the construction of the Louisiana National Bank Building. He average (sic) the lowest acquisition cost of $7.02 per square foot and the highest of $13.69 to arrive at an overall unit of $10.67 per square foot.
(2) American Banks acquisition of the entire block bounded by North Street, Main Street, Third Street and North 4th Street, for the construction of the American Bank Building. The acquisition prices ranged from $8.06 per square foot to $37.70 per square foot, for an overall unit price of $12.33 per square foot.
(3) City National Banks acquisition of the entire block bounded by North Blvd., Convention Street, North 4th Street and North 5th Street for the future construction of a bank building and other facilities. The acquisition paid was $19.48 per square foot.
Considering the unit prices paid for the above comparables, Mr. LeJeune stated it *494 was his opinion that a prudent, informed investor would be justified in paying $5.00 per square foot for Square C and $2.50 per square foot for Lot 7.
Mr. Williams' estimate of the value of the subject property was based on two methods, cost approach and land value added and income approach. His opinion was that the highest and best use of the property would be for commercial hosts, as motel, food outlets, etc.
In determining the value of the property under the cost approach, Mr. Williams valued the improvements at $58,980.00. He then valued Lot 7 at $2.00 per square foot and Square C at $5.00 per square foot. The square footage value was arrived at by using the following comparables.
(1) 451 Florida Corporation acquisitions for the Louisiana National Bank Building which averaged $12.62 per square foot.
(2) 451 Florida Corporation sale to Ethyl Corporation of 40,640 square feet of property fronting 127 feet on North 4th Street, 320 feet on Laurel Street and 127 feet on North 5th Street which sale was for $13.56 per square foot.
(3) Baton Rouge Bank acquisition of the North Blvd. block for construction of the Baton Rouge Bank which average (sic) $8.85 per square foot.
(4) La. Office Building Corporation acquisitions of property located on North 5th Street and North Street for construction of the Department of Education Building which cost $16.34 per square foot; acquisition of 19,816 from Robert Claitor of property in the area of the Education Building at $16.53 per square foot and the additional acquisition of 14,652 square feet at $17.06 per square foot. These purchases averaged $16.58 per square foot.
(5) American Bank acquisition of a block of land for the construction of the American Bank Building which cost $12.24 per square foot.
(6) Joseph Canizaro acquisition from Joseph Cavanaugh of 39,936 square feet located in the 600 block of North Blvd. at a cost of $12.25 per square foot.
(7) City National Bank acquisition of a block of land located on North Blvd., North 5th Street, Convention Street and North 4th Street, containing 126,740 square feet at a cost of $19.48 per square foot. (See Exhibit D-8, pages 32-44).
Based on the foregoing comparables, Mr. Williams valued Square C at $5.00 per square foot and Lot 7 at $2.00 per square foot. Considering the improvements at $58,980.00, Mr. Williams valued the total subject property at $460,342.00.
Under the income approach, Mr. Williams valued the improvements at $50,038.00, then added the land values at $5.00 per square foot for Square C and $2.00 per square foot for Lot 7 to arrive at a total price of $451,400.00. (See Exhibit D-8, pages 45-46).
It is well settled that potential use of expropriated property may be deemed its best and highest use for the purpose of determining its value provided that there is a reasonable expectation that the property may be so developed and utilized in the reasonably foreseeable future. State, Through Dept. of Highways v. Champagne, 371 So.2d 626 (1st Cir. 1979).
Mr. Dupree testified that the property was in a `static' neighborhood where demands for land has been limited to that needed by existing commercial business for expansion purposes. Upon request of counsels, the Court visited the subject property and must agree with Mr. Dupree that the property is located in a static area. This Court does not agree with Mr. LeJeune and Mr. Williams' opinion as to the highest and best use of the property. Development of the property for multi-story offices and/or commercial hosts is not a utilization of the property in the reasonably foreseeable future. The Court agrees with Mr. Dupree that the highest and best use of the property would be for warehouse development.
Inasmuch as the property contains structures that might be adaptable for warehouse space, the Court finds that the `cost approach to value' is the proper method in determining the fair market value of *495 the property. In arriving at a value under the cost approach it is necessary to know the value of the raw land. Considering the various comparables used by the appraisers, this Court does not find the comparables used by Mr. LeJeune and Mr. Williams constitute valid comparables inasmuch as the used comparables are not only removed from the subject property, but are located in the business community of Baton Rouge. It is obvious to the Court that these two appraisers are in agreement with the Court's conclusion since they arbitrarily reduced their comparables without any basis, other than noting the subject property was not in a growth area as the comparables. This Court finds that the best reliable comparable is the Witter-Lipsey tract valued at $1.47 per square foot. Increasing this square footage value to $2.00 a square foot because of its location on Highland Road is accepted by the Court, thus the expropriated property has a fair market value of $2.00 per square foot.
In considering the replacement cost of the existing structures, Mr. Williams testified and his report (Exhibit D-8, page 29) reflects, that cost data he used was taken from general construction cost information maintained in his office files. Whereas, Mr. Dupree testified the cost data he used was compiled by Marshall Valuation Service. The Court accepts the Marshall Valuation Service data used by Mr. Dupree as the better evidence for cost data. The value of the improvements is fixed at $46,269.00 (See Exhibit P-12, pages 20-23 for computations).
This Court finds the subject property to have a value of:

A.) Structures $46,269.00
B.) Land (84,642.3 sq. ft. @ $2.00 sq. ft.) 169,284.60
for a total market value of $215,553.60.

Defendant, Owners, have made a claim for attorney fees for the services of their attorney in the expropriation proceedings. R.S. 19.8 provides:
`(A) ... If the highest amount offered is less than the compensation awarded, the Court may award reasonable attorney fees.'
The State had previously offered Owners $160,000.00 on May 4, 1979, and subsequently offered $180,000.00 on June 15, 1979. On November 29, 1979, the trial date, approximately four (4) months after filing the expropriation suit, the State supplemented their offer to $215,000.00, subject to acquiring all of the property in Square 259. Even though the last offer is only $553.60 less than the market value fixed by this Court, attorney fees are being awarded inasmuch as the November 29, 1979, offer is subject to other acquisitions and was not made until trial date.
R.S. 19:12 states that:
`If a tender is made of the true value of the property to the owner thereof, before proceeding to a forced expropriation, the cost of the expropriation shall be paid by the owner.'
The Court believes that R.S. 19:8 and R.S. 19:12 must be construed in `pari-materia', thus the tender must be made before filing of the expropriation suit.
In considering reasonable attorney fees the Court must first consider these factors in awarding attorney fees, namely: (1) the ultimate result obtained; (2) responsibility incurred; (3) the importance of the litigation; (4) the amount involved; (5) the extent and character of the labor performed; (6) the legal knowledge and attainment and skill of the attorney; (7) the number of appearances made; (8) the intricacies of the facts and law involved; (9) the diligence and skill of counsel; and (10) the Court's own knowledge.
This Court was highly impressed with the legal knowledge and skill of Owner's attorney in representing the Owners. It was perhaps the best presentation this Court has had an occasion to receive. The attorney fees are fixed at $5,000.
There is no absolute rule by which the amount of the expert witness fee can be fixed, as such, in determining expert witness fees the Court considers the time consumed in preparation, the effort involved and the extent of examination of matters on which the witness expresses an opinion. *496 Dixie Elec. Membership Corp. v. McDowell, 280 So.2d 306 (1st Cir. 1973). The Court in considering the foregoing guides together with regards to the time spent in their Court appearances, fix the following expert witness fees:

(1) John LeJeune $850.00
(2) Kermit Wayne Williams 1,250.00

Legal interest is awarded the Owners from date of judgment of expropriation. Recreation & Park Commission v. German, 202 So.2d 469 (1st Cir. 1967). Judgment is rendered herein vesting title of the following described property in the name of the State of Louisiana, free and clear of all liens and encumbrances upon its payment to the Owners, G.R.W. Investments, a Louisiana partnership, composed of Al J. Ransome, Noel Gilbert and Robert A. Westerlund the sum of $215,553.60, together with attorney fees in the sum of $5,000 and all cost, including expert witness fees and legal interest from date of judgment of expropriation, said property being:
(1) A certain parcel or square of ground located in that subdivision known as SUBURB SWART of the Parish of East Baton Rouge, Louisiana, identified as Square C of said subdivision consisting of Lots One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), Nine (9), Ten (10) and Eleven (11) said property having frontage upon the Highland Road, Julia Street, Royal Street and Terrace Avenue all as is shown on the map or plan attached hereto and marked Exhibit "A".
(2) A certain lot or parcel of ground located in SUBURB SWART of the Parish of East Baton Rouge, Louisiana, identified as Lot Seven (7), of Square Two Hundred Fifty Nine (259) Suburb Swart, said lot fronting sixty (60') feet on the north side of Julia Street by a depth of one hundred twenty (120) feet between parallel lines, according to the map or plan attached hereto and marked Exhibit "A".
Judgment will be signed accordingly."
The determination of value in an expropriation suit is a finding of fact, and that determination, as in the case of other findings of fact, will not be upset unless it is manifestly erroneous. State, Department of Highways v. Gielen, 184 So.2d 737 (La. App.3d Cir. 1966); Texas Gas Transmission Corporation v. Hebert, 207 So.2d 368 (La. App.3d Cir. 1968). The trial court had the opportunity to hear and observe the expert witnesses, and, also, at the request of counsel for both sides, went to the site to be expropriated and determined that, contrary to the testimony of defendants' experts, the area was a "static area." Not only this, but the trial court was familiar with local conditions. An appellate court should and must defer to a trial judge's superior knowledge in the realm of local property conditions. Texas Gas Transmission Corporation v. Hebert, supra. Considering these factors, this Court finds that the determination of value arrived at by the trial court was entirely correct.
Defendants-appellants strongly argue that the recently adopted Constitution of the State (see Art. 1, Sec. 4) requires that the owner be compensated in an expropriation proceeding "to the full extent of his loss," and that "loss" includes loss of "plottage value."[1] "Plottage value" is the excess value attributable to a tract of land as a result of its being in a large tract suitable for development as a single unit at the time of sale or expropriation. While it may be correct that the Constitution requires that plottage value be considered under appropriate circumstances, the present suit is not a situation in which plottage value should play a significant part, or any part at all. The trial court, whose findings we adopt, found that the highest and best use of the property was for warehouse development, in which use, quite obviously, plottage value would be of *497 no significance. Plottage value, defendants' experts seem to be in agreement, would be of some importance as the tract could be used for a "multi-story" (later conceded to mean "three story") office building or a motel. However, the land was not suited for these uses. It was in what the trial court, from personal inspection, found to be a "static" neighborhood which was best suited for warehouse development. Indeed we note that Robert A. Westerlund, defendant and co-partner, testified that he talked to Popeye's about an operation on the corner; they planned to develop "some" commercially, and they planned to put warehouses on the back of the property. That fragmenting of the property is scarcely consistent with the defendants' experts' use of plottage value, which involves use of the already-assembled property as a single unit. We, therefore, believe that the trial court quite properly omitted plottage value as a determining factor in arriving at overall value.
Defendants contend that the Witter-Lipsey warehouse property was not a true comparable because (1) it was not on Highland Road, and (2) it was not acquired by Witter-Lipsey as an arms length transaction. While it is true that the former owner, George P. Waters, testified that the sale was made because of the financial circumstances of two of three co-owners, no sales are made in a vacuum, and to refuse to consider the sale of Waters as a true comparable would be to set a precedent of discarding from use many, if not practically all, comparable real estate transactions. The sale was not a foreclosure or a sale made under threat of seizure, and cannot be considered to be a "distress sale" in any sense of the term. Defendants contend that the sale to Witter-Lipsey may be disregarded because it was a sale without warranty. However, title does not appear to have been defective, and a simple examination of the public records would have revealed that fact. While it is true that the Witter-Lipsey property is not an ideal comparable because it is not on Highland Road, it is, as the trial court found, the best comparable offered by the expert witnesses, and the trial court took due regard of its possibly inferior location by according the defendants' tract a higher value per square foot ($2.00 per square foot as opposed to $1.47 per square foot for Witter-Lipsey).
We thus find for the reasons stated in the trial court's written reasons for judgment, and in this opinion as well, that the valuation arrived at by the trial court was entirely correct and free from error.
Accordingly, the judgment of the trial court is affirmed, at defendants-appellants cost.
AFFIRMED.
NOTES
[1] In support of this proposition, defendants cite Marathon Pipe Line Co. v. Pitcher, 368 So.2d 994 (La.1979) and State through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979). We notice that neither case concerns the issue of plottage value.