469 So.2d 483 (1985)
FAUSTINA PIPE LINE COMPANY, Plaintiff-Appellant,
v.
John Austin HEBERT, Annabelle Hebert Sonnier, et al., Defendants-Appellees.
FAUSTINA PIPE LINE COMPANY, Plaintiff-Appellant,
v.
Percy HEBERT, et al., Defendants-Appellees.
Nos. 84-459, 84-460.
Court of Appeal of Louisiana, Third Circuit.
May 15, 1985.
*485 Charles R. Sonnier of Sonnier and Hebert, Abbeville, Elizabeth Hastings, Lafayette, for plaintiff-appellant.
Kenneth G. Miller and Thomas J. Miller, Diane Sorola, Lafayette, for defendants-appellees.
Before STOKER, LABORDE and KING, JJ.
LABORDE, Judge.
In these consolidated appeals from two pipeline expropriation trials, we affirm the lower court's awards for the taking of private property and for severance damages.
Plaintiff-appellant Faustina Pipeline Company (Faustina) operates pipelines which provide natural gas to the general public. The current proceedings stem from Faustina's acquisition of a pipeline right-of-way across tracts of private property in the *486 southern part of Lafayette Parish. In both cases that we consider today, defendant landowners granted Faustina the right-of-way sought, and the only question litigated at the trials was just compensation for the landowners. Although the relevant facts and law necessary for the disposition of these two cases overlap to a great extent, certain issues peculiar to each case render it more convenient for this court to discuss each case in separate sections.

NUMBER 84-459
In this suit, Faustina and defendants-appellees Annabelle Hebert Sonnier, John Austin Hebert, et al (landowners), contested both compensation for the expropriated property and severance damages to the remaining property.
The landowners' property is an approximately forty acre tract in rural Lafayette Parish, just outside of the town of Youngsville. The land is currently under an agricultural lease, and has been farmed to produce soybeans. The land seldom floods, and has been a homesite in the past. Approximately eight hundred feet of the tract fronts on a two-lane blacktopped road.
At trial, the judge decided that the highest and best use of the land is for rural residential homesites. The trial judge set the value of the land at $7,250 per acre. For the taking of an approximately .59 acre strip of the land as a right-of-way, the trial judge set compensation at $3,442, which takes into account Faustina's expert testimony that eighty percent of the use of the right-of-way strip will be lost to the landowner.[1] The trial judge set severance damages to the remainder of the property at $8,600, and he also awarded $5,000 encasement costs for one street to cross the pipeline.
On appeal, Faustina claims that the trial judge erred as follows:
(1) The judge erred by giving more weight to the testimony of landowners' experts than to Faustina's experts.
(2) The judge erred by finding that rural residential homesites is the highest and best use of the land.
(3) The judge erred by awarding severance damages.
(4) The judge erred by awarding encasement costs.
We will separately discuss these assignments of error.

(1) The Experts
Faustina claims that its expert appraisal and expropriation witnesses are more "expert" or qualified than the landowners' corresponding experts. Therefore, Faustina contends, the trial judge should have ignored the testimony of the landowners' experts and accepted Faustina's experts' opinions on the highest and best use of the land, severance damages, etc.
We will not list the many qualifications of the witnesses tendered to and accepted by the trial judge as "expert" in this case. We are impressed by the various professional memberships and experience of Faustina's experts, as well as their laudable achievements in specialized education and training. However, the landowners' experts also have suitable experience, education, and training to qualify as experts for the factual valuation and damage issues presented by this case. The trial judge specifically noted that one of the landowners' experts is only qualified to appraise real estate, and he limited his consideration of that expert's testimony accordingly.
The determination of whether a witness is qualified to testify as an expert rests within the sound discretion of the trial judge. Catalanotto v. Hebert, 347 So.2d 301, 303 (La.App. 4th Cir.1977); Carvell v. Winn, 154 So.2d 788, 790 (La.App.3d Cir.), writ denied, 245 La. 61, 156 So.2d 603 (1963). The trial judge did not abuse his discretion by accepting the landowners' opinion witnesses as qualified experts. Further, even though the landowners' experts' lists of professional achievements *487 and recognition are arguably less impressive (and certainly less lengthy) than the laurels gathered by Faustina's experts, this alone does not mean that the testimony of Faustina's experts is entitled to more weight than that of the landowners' experts. If an expert is qualified to testify at all, the weight of that expert's testimony, like all testimony, depends on the fact-finder's assessment of its logic, consistency, reasonableness, and credibility. It is distinctly within the province of the trial fact-finder (here, the trial judge) to assess the credibility of expert witnesses and the weight to be assigned to their testimony. See, e.g., Acadian Heritage Realty v. City of Lafayette, 434 So.2d 182, 189 (La.App.3d Cir.), writ denied, 440 So.2d 733 (La.1983); Smith v. Lumbermen's Mut. Cas. Co., 414 So.2d 1281, 1283 (La.App.3d Cir.), writ denied, 417 So.2d 367 (La.1982). The evaluation of and conclusions drawn from competing expert testimony will not be disturbed on appeal in the absence of manifest error. Smith, 414 So.2d at 1283. We examine the testimony of the expert witness to determine whether any factual conclusions drawn from that testimony are manifestly erroneous; our consideration of the qualifications of the source of that testimony (i.e., the credentials of the witness) extends only to whether the trial judge abused his discretion by accepting the testifying witness as an expert.
The trial judge did not err by accepting the witnesses so tendered by the landowners as experts. The absence or presence of manifest error in any factual conclusions drawn by the trial judge at least in part from the opinions of those experts remains to be considered.

(2) Highest and Best Use
Faustina claims that the trial judge erred by concluding that the highest and best use of the entire tract of land is for rural residential homesites. Faustina urges this court to set aside this factual conclusion of the trial judge, and to adopt the opinion of either one of its two experts.
One of Faustina's experts testified that rural residential homesites represents the highest and best use of the land to the depth of about seven hundred feet from the road frontage, and the balance of the land is best suited for agricultural purposes. Thus, this expert testified that about one-third of the land is suited for residential purposes. The opinion of Faustina's other expert limited rural residential usage to a depth of about two hundred and fifty feet from the frontage road, with the balance of the tract best suited for agriculture. The landowners' experts opined that the entire tract's highest and best use is for rural residential homesites.
"Highest and best use" is a valuation procedure that sets the expropriation value of land. The "highest and best use" of a tract of land is the most favorable (or highest-priced) use of that land that is reasonably prospective. The use may not be merely speculative, but must be shown to be reasonably likely to occur in the not-too-distant future. See State, Dept. of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964); Faustina Pipeline Co. v. Bernard, 458 So.2d 981, 984-85 (La.App.3d Cir.1984), writ denied, 462 So.2d 1249 (La.1985); Faustina Pipeline Co. v. Broussard, 450 So.2d 17, 21 (La.App.3d Cir.), writ denied, 452 So.2d 172 (La.1984). This somewhat nebulous legal standard presents several issues of fact to the trial judge. Is the proposed use reasonably suited to the land? Is the use merely speculative, or reasonably likely to occur? Is the time in which the proposed use is reasonably likely to occur within the not-too-distant future, or in the too-distant future?
In this case, the trial judge was presented with conflicting evidence on the pertinent factual considerations. Faustina's experts opined that the population growth rate in the area is not sufficient to provide a market for the landowners' entire tract as residential property in the not-too-distant future. These experts also contended that the most suitable use for the bulk of the tract is for agriculture. The landowners' experts claimed that the market would readily absorb the tract as rural residential property, based on their assessment *488 of comparable local property and market activity in the relevant area. The landowners testified that they planned to subdivide the land for such use.
The trial judge resolved this factual dispute in favor of defendant landowners. As we noted previously, the evaluation of and conclusions drawn from competing expert testimony will not be disturbed on appeal in the absence of manifest error. Smith, 414 So.2d at 1283. "In expropriation cases, much discretion is granted to the trial judge in weighing the testimony of experts." Broussard, 450 So.2d at 21 (citation omitted).
Although their conclusions are in conflict, the record reveals that the experts for both parties extensively researched the pertinent factual issues. We cannot say that the trial judge manifestly erred by agreeing with the landowners and their experts on the issue of the highest and best use of the tract in question.

(3) Severance Damages
Severance damage in an expropriation case may be defined as a diminution in the value of the landowner's remaining, unexpropriated property caused by the taking of the expropriated property or the use to which the expropriated property is put. Thus, for example, when a portion of a homeowner's front yard is expropriated to widen a road, not only must the taker compensate for the acquired land, but, in order to provide actual "just compensation," the taker must also pay the homeowner for any diminution in the value of his or her homesite that occurs because a smaller lot is in fact less marketable or because the presence of a wider road (with prospective heavier traffic) in itself lowers the value of the remaining property. See, e.g., City of Lafayette v. Dore, 460 So.2d 755 (La. App.3d Cir.1984).
Faustina first argues that lower (or no) severance damages are owed to the landowners in this case because the value of most of the unexpropriated land will not be diminished by the presence of its pipeline. This argument is entertwined with and depends upon Faustina's argument that the bulk of the tract is not suited for residential development but instead is mainly usable for agriculture. Faustina contends that its pipeline will not interfere with the farming of soybeans outside of the expropriated right-of-way, nor will the pipeline lower the value of the land for such agricultural operations.
We have already concluded, however, that the trial judge did not err by deciding that rural residential homesites represent the highest and best use of the entire tract of land. Thus, we consider damage to the unexpropriated land in light of this "highest and best use," not in light of Faustina's suggested use for the land.
It is a factual matter whether the installation of a gas pipeline damages the residential value of contiguous land; if it is shown at trial that a pipeline's presence decreases nearby "highest and best use" property values, then the landowner can recover the amount of that diminution, even in cases such as the present, where the new pipeline parallels an existing pipeline. Michigan Wisconsin Pipeline v. Miller, 229 So.2d 182, 183-84 (La.App.3d Cir. 1969), writ denied, 255 La. 482, 231 So.2d 395 (1970). The question of the amount of damage caused by the second pipeline is, of course, also a question of fact.
Arguably, a second pipeline will not decrease property value as drastically as the installation of an initial pipeline in virgin territory. And, of course, the severance damages amount depends on the highest and best use value of the contiguous property before the installation of the pipeline in question. Also, because the primary cause of a gas pipeline's diminution of the value of contiguous residential property is the threat of leaks and explosions, it is evident that the damage will only extend to areas fairly close to the right-of-way, and that the value of property in the outer reaches of this "band of danger" will not be as adversely affected as those areas closer to the pipeline.
*489 The trial judge considered the testimony of all experts as to these factual matters. He determined that two-hundred foot wide strips on either side of the right-of-way were damaged. He accepted the landowners' expert's calculation that the one-hundred foot wide strips closest to the pipeline on either side of the right-of-way would suffer a seventy-five percent loss in value, while the next one-hundred foot wide strips would suffer only a fifty percent value diminution. This factual determination is based on reasonable, competent expert testimony. We cannot say that it is clearly wrong.
Faustina also argues that severance damages were erroneously awarded on the basis of the decline in the market value of subdivided lots, when, in fact, no steps had been taken to subdivide the tract in question before the commencement of expropriation proceedings. As correctly noted by the landowners, however, the trial judge did not base severance damages on a "subdivision analysis," but instead based his calculations on the "highest and best use" value of the acreage within the affected strips. This basis for severance damages is legally correct.
Finally, Faustina contends that no evidence in the record supports the conclusion that the landowners proved any severance damage. This argument entirely lacks merit. The record is replete with testimony, both lay and expert, and other evidence that supports the severance damages award.
The trial judge did not err in his award of severance damages.

(4) Encasement Costs
When encasement of a pipeline is reasonably necessary for the highest and best use of property, encasement costs are proper as an element of just compensation to the landowner. Marathon Pipeline Co. v. Pitcher, 368 So.2d 994, 995 (La.1979). A pipeline must be encased when a road crosses it, so that the weight of passing vehicles will not crush or otherwise damage the pipeline. In this case, the highest and best use of the property is for rural residential homesites. This will entail access to individual houses, and for this purpose, at least one road will have to cross Faustina's pipeline. Thus, in this case, just as in Pitcher, proper development requires at least limited encasement, and the pipeline company must bear the cost of encasement. The landowners' sought competitive bids for the price of encasement operations, and approximately $5000 represents the lowest cost for encasing the pipeline at one residential street crossing.
Faustina argues that whether any residential street will ever cross its pipeline on the landowners' property is solely a matter of speculation, as is the question of whether the tract will ever be developed. However, the trial judge found that the land will very likely be used for rural residential homesites. Although the judge rejected the landowners' contention that at least three roads will cross the pipeline, the judge found that, because of the physical configuration of the tract and the path of the pipeline, at least one encased crossing will be necessary for the land to be put to its highest and best use. This factual conclusion is not clearly wrong, and the trial judge's ruling has a sound legal basis in the Pitcher opinion of the Louisiana Supreme Court.
Faustina also argues that, if encasement costs must be paid, then severance damages are not due, or vice-versa. Faustina contends that encasement of a pipeline all but eliminates the risk of leaks and explosions, which are the dangers of a pipeline that give rise to severance damage to contiguous residential property. From a common sense perspective, encasement would appear to decrease danger, but this court is hesitant to reach a conclusion as to the percentage (if any) by which pipeline risks decrease after encasement. We do not have the engineering and scientific expertise to decide such matters solely upon the urging of counsel, nor does the record contain any evidence tending to prove or to disprove this asserted benefit of encasement. In this case, it is only established *490 that encasement is necessary for safe road crossings, not that any other safety benefits accrue from encasement. However, even if we accept, arguendo, Faustina's contention that encasement virtually eliminates pipeline danger, we must still find that both encasement costs and severance damages are due in this case. The encasement costs awarded by the trial judge are for the encasement of a length of pipeline only as long as a residential street is wide. The remainder of the pipeline on the landowners' property will not be encased (or will be encased at the landowners' cost); therefore, severance damages are not significantly offset by payment for encasement costs in the present instance, even if one assumes that encasement of a pipeline in fact limits severance damage in any event.
The trial judge did not err by awarding encasement costs for one street crossing. Further, the amount of this award, viewed both in isolation and in conjunction with the award for severance damages, is supported by the record.

NUMBER 84-460
In this suit, Faustina and defendants-appellees Percy Hebert, et al (landowners), contested both compensation for the expropriated property and severance damages to the remaining property. However, on appeal, Faustina presents only the issue of severance damages for our review.
The landowners' property is an approximately one-hundred and seven acre tract just southeast of the town of Youngsville. The property is divided by a two-lane blacktopped road. Most of the land is currently used for agricultural purposes, and Mr. Hebert has a home on the tract.
At trial, the judge decided that the highest and best use of the land is for rural residential homesites. The judge set the value of the land at $9,000 per acre, (in accord with the testimony of Faustina's experts), and he awarded severance damages on the landowners' expert's theory that a two-hundred and fifty foot wide strip of land south of the pipeline right-of-way is diminished in value by ten percent. (Directly north of Faustina's pipeline on the landowners' property is another pipeline.) Total severance damages were set at $17,514.
Four of Faustina's six assignments of error need not be discussed, as they substantially involve issues discussed and resolved above. We see no relevant dissimilar facts in this case in regard to the four assignments of error we decline to address that require comment in addition to the discussion in Number 84-459. In its two remaining assignments of error, Faustina contends:
(1) The trial judge erred by awarding severance damages when no valuation was made immediately before and immediately after the taking.
(2) The trial judge erred by allowing the severance damage award for a two-hundred and fifty foot wide strip of land to overlap with the land paid for as part of the expropriated right-of-way.
(1) Valuation Before and After Taking
Faustina contends that the landowners' expert did not undertake adequate research to calculate properly the value of the tract before the taking; i.e., he did not assess a market value of the land (at its best and highest use) from which a diminution by reason of the presence of the pipeline could reasonably be calculated. Faustina is, in effect, arguing that the trial judge manifestly erred by setting the value of the land at $9,000 per acre. This is a curious argument, because that figure is drawn from the testimony of Faustina's experts.
In fact, as noted by the landowners, the landowners' expert did testify as to the value of the land before the taking, and his opinion was grounded on local market data. However, because the trial judge accepted the testimony of Faustina's experts on this issue, whether the landowners' expert's valuation opinion is supported by adequate research is irrelevant.
This assignment of error lacks merit.

*491 (2) Overlap in Compensation
Faustina argues that the two-hundred and fifty foot wide strip of land which the trial judge found to be diminished in value by the presence of the pipeline includes the pipeline right-of-way to the south of the actual location of the pipeline. Therefore, Faustina contends, the landowner is receiving double compensation for the southern half of the pipeline right-of-way.
Faustina is mistaken in its factual assumption that the damaged strip is measured from the center of the expropriated right-of-way. The record reveals that the legally correct assessment of severance damages is for a two-hundred and fifty foot wide strip commencing at the southern boundary of Faustina's right-of-way. Moreover, the damage award is supported by the facts of this case and, although severance damage in each gas pipeline expropriation case must turn on the discrete facts of the individual case, the jurisprudence supports an award of damages for property within two-hundred and fifty feet of the pipeline right-of-way. See, e.g., Louisiana Intrastate Gas Corp. v. Guidry, 357 So.2d 830 (La.App. 3d Cir.), writ denied, 359 So.2d 1308 (La.1978).

CONCLUSION
Based on the above reasons, the judgments in these two cases, Number 84-459 and Number 84-460, are affirmed. All costs are assessed to plaintiff-appellant Faustina Pipeline Company.
AFFIRMED.
NOTES
[1] The formula used may be summarized: .59 × $7,250 × .8 = $3442.