DOMENGEAUX, Judge.
This case arose from an auto accident in Rapides Parish between Dr. Blanchard Tex-ada, driver of the first vehicle and plaintiff, Mrs. Bobbie Jenkins, driver of the second vehicle. Mrs. Jenkins’ mother, co-plaintiff, Mrs. Callie Stalsby, was a passenger in Mrs. Jenkins’ automobile. Defendant, Safeco Insurance Company of America, insured Doctor Texada who is now deceased. Mrs. Jenkins and Mrs. Stalsby sued Safeco for damages they claim resulted from the accident. Safeco conceded liability but contested the amount plaintiff claimed. After a jury trial, plaintiffs were awarded the following: $5,800.00 for medical expenses and general damages to Mrs. Jenkins; $9,000.00 for medical expenses and general damages to Mrs. Stalsby. Plaintiffs have appealed this award. The sole issue presented on appeal is whether or not this award is insufficient in light of the presented evidence.
FACTS
On September 8,1984, in Alexandria, Dr. Blanchard Texada’s automobile struck a vehicle driven by Mrs. Bobbie Jenkins. Mrs. Jenkins’ mother, Mrs. Callie Stalsby, was a passenger in the Jenkins’ vehicle. After the accident, Mrs. Jenkins and Mrs. Stalsby were brought to Cabrini Hospital. Mrs. Stalsby suffered a contusion on her left knee, cervical and thoracic sprains and a partial tear of the rotator cuff of the left shoulder. She was hospitalized for four days. Mrs. Jenkins was discharged on the day of the accident, but sustained a forehead laceration and felt pain in her shoulder and neck.
Mrs. Jenkins was readmitted to Cabrini Hospital on September 21, 1984, two weeks after the accident. Upon discharge, these medical records diagnosed her as having suffered a recent trauma with sustained injuries of a scalp laceration and a contusion to the head. She also had recurrent headaches and severe nutritional anemia. A neurological exam showed no existing neurological problems. A thyroid study, however, showed her to have thyrotoxico-sis, a condition in which the thyroid secretes an abnormally high level of thyroid hormone. At this time, Mrs. Jenkins’ system contained twice the normal level of this hormone. Although the record is unclear, it appears that Mrs. Jenkins left the hospital before the doctors received these results. Prior to leaving, however, she was given B-12 shots for a nutritional deficiency and iron supplements for anemia.
In January, 1985, Mrs. Jenkins moved from an apartment she had been renting into her mother’s residence. It was at this time the family and friends noticed a marked change in Mrs. Jenkins’ personality and behavior. Previously, Mrs. Jenkins had been a pleasant, well-dressed and outgoing person who loved her job as a sitter for bed-ridden patients. At this time, however, she became continuously depressed, cried often, appeared unkempt in public and persisted in claiming to her children and neighbors that her mother, and later, her aunt, were trying to poison her. She refused to eat anything prepared by her mother or aunt and, eventually, started barricading herself into her room at night so that they could not try to poison her while she slept.
*788 By April, 1985, Mrs. Jenkins’ weight had gone from 110 lbs. to 79 lbs. Besides refusing to eat or drink anything prepared by her mother or aunt, she had difficulty swallowing anything and constantly complained of choking. By April 30, 1985, she had to be checked into Central Louisiana State Hospital. While there she continued to claim that she was being poisoned, but now by the hospital staff. Eventually, the hospital had to judicially commit Mrs. Jenkins in order to force feed her.
Dr. Ellis W. Wilkerson, III, of Central Hospital, a qualified expert in internal medicine, treated Mrs. Jenkins at this time. He diagnosed her as having chemical hepatitus and thyrotoxicosis. After curing the hepa-titus, he sent Mrs. Jenkins to LSU Medical Center in Shreveport to receive 1-131 therapy to cure the thyrotoxicosis. Doctor Wilkerson testified at trial that Mrs. Jenkins had multi-nodual goiter which caused the thyrotoxicosis. He also stated that multi-nodual goiter could be caused by stress and, in his expert opinion, Mrs. Jenkins’ illness was a direct result of the car accident. He based his opinion on the medical history he received from Mrs. Jenkins that, .prior to the accident, she had had no physical or psychological problems and that her illness developed after the accident. Doctor Wilkerson could not remember whether he had ever seen the Cabrini medical records taken of Mrs. Jenkins just two weeks after the accident. However, he did not feel that they were relevant anyway as he believed that the lack of any problems prior to the accident strongly indicated that the accident caused the thyro-toxicosis. Doctor Wilkerson also based his expert opinion that multi-nodual goiter was stress induced on nonidentifiable medical literature which had been donated to him from a now deceased physician, and on his medical school training on the thyroid in the 1950s.
Dr. Ronald S. Pryor, Chief Psychologist at Central Hospital, also evaluated Mrs. Jenkins. He diagnosed her as having mixed organic brain syndrome. This diagnosis was based on his conclusion that Mrs. Jenkins had suffered a concussion when she hit her head in the accident. However, a CAT scan taken of Mrs. Jenkins while she was in Central Hospital showed no evidence that a concussion or contusion on the brain had occurred. Also, as stated earlier, the Cabrini Neurological study taken within two weeks of the accident revealed no neurological problems.
At the trial, both Mrs. Jenkins and Mrs. Stalsby testified regarding their injuries. Mrs. Jenkins testified that she still believed her mother was trying to poison her and she still barricades herself into her room at night.
Dr. Paul Ware, a specialist in neurology, psychiatry, neuropsychiatry and family medicine and presently head of the behavioral medicine section of the LSU Medical School in Shreveport, testified on behalf of the defendant at trial. Doctor Ware evaluated Mrs. Jenkins on December 4, 1985, and diagnosed her as having an hysterical personality disorder that had been established prior to the accident. He reviewed the Cabrini Hospital records, and, based on Mrs. Jenkins high level of thyroid hormone present two weeks after the accident, determined that Mrs. Jenkins was thyrotoxic prior to the accident. Both Doctor Ware and Mrs. Jenkins’ physician, Doctor Wilkerson, testified that multi-nodual goiter, could not develop within a period of only two weeks. Instead, both physicians testified that it generally takes several months to years for the condition to develop. Also, Doctor Ware testified that multi-nodual goiter is not induced or aggravated by stress. His opinion was based on the continual updating he undergoes by reading four psychiatric journals, listening to audio tapes on psychiatry, and a book, entitled The Thyroid and Its Diseases, (no citation available), which he classifies as the primary authority on the functions of the thyroid. Therefore, because Mrs. Jenkins was thyrotoxic two weeks after the accident and because stress cannot affect the condition, Doctor Ware concluded that the accident did not cause or aggravate her illness.
Doctor Ware also testified that, contrary to Doctor Pryor’s diagnosis, Mrs. Jenkins could not have had mixed organic brain syndrome because her delusional nature *789 was uncharacteristic of this illness. Instead, Doctor Ware felt that her paranoid ideation was due to the thyrotoxicosis, as fifty percent of all thyrotoxic patients are delusional.
In his closing argument, plaintiffs’ attorney asked for a total damage award of $209,820.35 for Mrs. Jenkins medical expenses and damages, and $50,026.00 for Mrs. Stalsby’s medical expenses and damages. The jury awarded to Mrs. Jenkins $5,800.00 in total damages and to Mrs. Stalsby $9,000.00 in total damages.
JURY DETERMINATION OF DAMAGES
Plaintiffs contend that the jury abused its discretion in assessing the damage amount. Plaintiffs argue that the jury committed manifest error in apparently completely discounting the opinions of plaintiffs’ physicians that stress from the accident caused Mrs. Jenkins’ thyrotoxico-sis. The jury evidently agreed with the opinion of defendant’s physician, Doctor Ware, that Mrs. Jenkins had had thyrotoxi-cosis prior to the accident and that stress could not and did not induce or aggravate her illness.
The Court of Appeal will not, in the absence of manifest error, disturb the evaluation of and conclusions drawn by the trial court from competing expert testimony, but will examine the testimony of the expert to determine whether any factual conclusions drawn from the testimony are manifestly erroneous and whether the trial court abused its discretion in accepting the witness as an expert. Faustina Pipe Line Co. v. Hebert, 469 So.2d 483 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1295 (La.1985).
Doctor Ware’s professional qualifications were both lengthy and impressive. For eighteen years he had the largest private practice of psychiatry in north Louisiana. Besides being Board certified in neurology and psychiatry, he is presently an examiner for the American Board of Psychiatry and a clinical professor for the departments of psychiatry and neurology at LSU Shreveport School of Medicine. Based on the above criteria, the trial court committed no error in accepting Doctor Ware as an expert in his field. Relying on his review of Mrs. Jenkins’ past medical records and his own expertise in psychiatry and neurology, Doctor Ware indisputably and unequivocally testified that Mrs. Jenkins’ illness was neither caused nor aggravated by the auto accident. There appears to be no error in the jury’s factual assessment of Doctor Ware’s testimony; nor does their ultimate conclusion drawn from this testimony, that defendant was not liable for Mrs. Jenkins’ thyrotoxicosis, appear to be manifestly erroneous.
An appellate court can disturb an award made by the trial court only where the record clearly reveals that the trier of fact abused its great discretion. Gonzalas v. Louisiana Power & Light Co., 487 So.2d 1254 (La.App.3rd Cir.1986). The plaintiff’s damage award was much below what had been requested. Plaintiffs valued Mrs. Jenkins’ medical expenses at $31,820.35. Approximately $30,300.00 of expenses was attributable to treating Mrs. Jenkins’ thy-rotoxicosis. Therefore, the jury’s award of $1,500.00 for Mrs. Jenkins’ medical expenses appears correct. The other amounts awarded for both Mrs. Jenkins and Mrs. Stalsby’s damages do not appear, in view of the conclusions reached by the jury, to be an abuse of discretion.
For the above and foregoing reasons the trial court’s judgment is affirmed. Costs on appeal are assessed to the plaintiffs.
AFFIRMED.