JERSEY CITY REDEVELOPMENT AGENCY, A BODY COR-
PORATE AND POLITIC OF THE STATE OF NEW JER-
SEY, AND JOHN JOSEPH MARCHESE, INDIVIDUALLY
AND AS A COMMISSIONER AND TREASURER OF THE
JERSEY CITY REDEVELOPMENT AGENCY, PLAIN-
TIFFS-APPELLANTS, v. GEORGE F. KUGLER, JR., AT-
TORNEY GENERAL OF THE STATE OF NEW JERSEY;
GOLDHAND LTD., A LIMITED PARTNERSHIP; ORI-
ENTAL ATLANTIC CITY CORPORATION, A CORPORA-
TION OF NEW JERSEY; RAYMOND PAPP AND JAC-
QUELINE PAPP, HIS WIFE; AND GEORGE OSWALD
AND CAROLYN OSWALD, HIS WIFE, DEFENDANTS-
RESPONDENTS.

Argued February 22 and 23, 1971—Decided May 24, 1971.

Mr. *Benjamin H. Chodash* argued the cause for appellants (*Messrs. Krieger, Chodash and Politan,* attorneys).

Mr. *Joseph Charles,* Deputy Attorney General, argued the cause for respondent Attorney General of New Jersey (*Mr. Stephen Skillman,* Assistant Attorney General, of Counsel; *Mr. George F. Kugler, Jr.,* Attorney General of New Jersey).

Mr. *William R. Handler* argued the cause for respondent Goldhand Ltd. (*Mr. George R. Handler* on the brief; *Messrs. George R. and William L. Handler,* attorneys).

Mr. *Herman C. Silverstein* argued the cause for respondents Papp and Dashev and as *amicus curiae* on behalf of others similarly situated.

The opinion of the Court was delivered by

FRANCIS, J. The plaintiffs in this action sought a judgment declaring that certain 1967 amendments (*L.* 1967, *c.* 217 and *c.* 218) to the Blighted Area Act, *N. J. S. A.* 40:55–21.1 *et seq.,* and the Eminent Domain Act, *N. J. S. A.* 20:1–1 *et seq.* are unconstitutional. The trial court in an unreported opinion granted defendants' motion for summary judgment and the Appellate Division affirmed. *Jersey City Redevelopment Agency v. Kugler,* 111 *N. J. Super.* 50 (App. Div. 1970). Plaintiffs appealed to this Court. *R.* 2:2–1(a)(1).

By a February 2, 1960 resolution, the Board of Commissioners of Jersey City declared blighted a land area of approximately 24.8 acres. The area which consists of 220 separate parcels is known as the Henderson Street Urban Renewal Project. Acquisition of the property for redevelopment was to be financed two-thirds by the United States through the Department of Housing and Urban Development and one-third by Jersey City. Nine years passed before the plaintiff-Agency instituted condemnation proceedings to acquire the property. In the meantime, the Legislature, by Chapters 217

and 218, *L.* 1967 amended the Blighted Area Act, subsection 21.10 (*N. J. S. A.* 40:55–21.10), and the Eminent Domain Act, subsection 9 (*N. J. S. A.* 20:1–9), with respect to the compensation to be paid when property is acquired in eminent domain proceedings in connection with the development or redevelopment of a blighted area. Specifically, both amendments provided that in such cases "the value of any property sought to be acquired shall be fixed and determined to be no less than the value as of the date of the declaration of blight by the governing body * * *."

Plaintiffs charge that the amendments violate the Fifth Amendment of the United States Constitution and Article I, paragraph 20 of the New Jersey Constitution which provide that private property shall not be taken for public use without just compensation. They assert that ascertainment of the sum representing just compensation is a judicial function, and that the Legislature has no power to impose upon the courts an arbitrary and binding rule for the admeasurement of such compensation in cases involving the taking of land for redevelopment purposes after it has been declared blighted. More particularly, they claim that the lawmakers cannot impose upon the courts a requirement to fix the value of the property as of a fictitious taking date rather than the actual taking date. Such a test, it is contended, introduces an invalid artificial factor into the constitutional mandate for payment of just compensation for the land when it is in fact taken. The Appellate Division disposed of these arguments in favor of defendants, and we agree with that result. 111 *N. J. Super., supra,* at 57–60. However, we believe that some additional discussion may be helpful.

Other constitutional issues were raised by plaintiffs; likewise defendants interposed a challenge to plaintiffs' standing to maintain the action. We are satisfied that those issues require no treatment beyond that which they were given in the Appellate Division.

It may be said as a general rule that just compensation in condemnation cases is measured as of the date of

the public taking. 3 *Nichols, Eminent Domain* § 8.5 [1], pp. 29–31 (3d ed. 1965); 4 *Id.* § 12.23, p. 72. In the ordinary case in our State, prior to the 1967 amendments here involved, the statute provided that the amount to be paid for the property taken should represent its value as of the date of the commencement of the condemnation action. *N. J. S. A.* 20 :1–9; *State by State Highway Com'r v. Jones,* 27 *N. J.* 257 (1958); *State by State Highway Com'r v. Gorga,* 26 *N. J.* 113 (1958). Value in this context means the full equivalent in money of the property taken. *United States v. Miller,* 317 *U. S.* 369, 373, 63 *S. Ct.* 276, 87 *L. Ed.* 336, 342 (1943); *Monongahela Navigation Co. v. United States,* 148 *U. S.* 312, 13 *S. Ct.* 622, 37 *L. Ed.* 463 (1893); 27 *Am. Jur.* 2d, *Eminent Domain* § 266, p. 53 (1966). If, however, a public agency possessed of the power of eminent domain enters into possession of private property and puts it to public use without payment of compensation, the owner may utilize mandamus to compel payment of its value, to be determined ordinarily as of the time of appropriation. See *State by State Highway Com'r v. Cooper,* 24 *N. J.* 261, *cert. den.* 355 *U. S.* 829, 78 *S. Ct.* 41, 2 *L. Ed.* 2d 42 (1957); *Haven Homes v. Raritan Tp.,* 19 *N. J.* 239 (1955); *Brown v. Murphy,* 136 *N. J. L.* 183, 185 (E. & A. 1947); *Yara Engineering Corp. v. Newark,* 136 *N. J. Eq.* 453, 464 (Ch. 1945); 26 *Am. Jur.* 2d, *Eminent Domain* § 152, pp. 815–16 (1966).

In the ordinary case the generally prevailing view is that if, after the taking and before the condemnation action, the property is reduced in value because of alterations by the public agency or otherwise, the owner would be entitled justly to the higher valuation as of the date of the taking. *Cf. N. J. S. A.* 27 :7–22. As this Court suggested in *Jones* such rule "may well be compelled by the constitutional guaranty of just compensation." *State by State Highway Com'r v. Jones, supra,* 27 *N. J.* at 262. But if, after the taking and before the condemnation action, the property increases in value because of alterations, the owner would not be entitled

to the higher valuation. *Id.* at 262; *United States v. Miller,*
*supra,* 317 *U. S.* at 377, 63 *S. Ct.* 276, 87 *L. Ed.* at 345; 3
*Nichols, supra,* § 8.5 [1], pp. 29–31; 27 *Am. Jur.* 2d, *supra,*
§ 266, pp. 54–55; and *cf. State by State Highway Com'r v.*
*Gorga, supra,* 26 *N. J.* 113.

No appellate court decision in our State has come to our
attention which dealt with the problem of the effect in sub-
sequent condemnation cases of the earlier announcement by
a public agency that a public improvement was planned for
a particular location or area. When such land is taken there-
after for that purpose, in measuring just compensation is
the owner entitled to the benefit of any increase in value
or must he suffer any diminution in value which may have
resulted from the public announcement of the improvement?
The generally prevailing rule, as indicated by the texts and
rulings in other jurisdictions, seems to be that any diminu-
tion or enhancement in value thus stimulated cannot be
charged against or credited to the owner in the later con-
demnation proceedings. The rule supported by the weight
of authority in the ordinary condemnation case is that the
proper basis of compensation is the value of the property
as it would be at the time of the taking (or at the time
fixed by the statute, such as the date of commencement of
the condemnation proceedings) disregarding either the de-
preciating threat of or the inflationary reaction to the pro-
posed public project. See *State v. Nordstrom,* 54 *N. J.* 50,
54 (1969); *United States v. Cors,* 337 *U. S.* 325, 333, 69
*S. Ct.* 1086, 93 *L. Ed.* 1392, 1399 (1949); *Cole v. Boston*
*Edison Company,* 338 *Mass.* 661, 157 *N. E.* 2d 209, 212
(1959); *City of Cleveland v. Carcione,* 118 *Ohio App.* 525,
190 *N. E.* 2d 52 (1963); *Annotation, Condemnation — De-*
*preciation in Value,* 5 *A. L. R.* 3d 901 (1966); *Annotation,*
*Condemnation — Damages — Enhanced Value,* 147 *A. L. R.*
66, 68 (1943); 27 *Am. Jur.* 2d, *supra,* § 266, p. 54, § 282,
p. 59; and *cf. State, Acting By and Through Roe v. Wemrock*
*Orchards, Inc.,* 95 *N. J. Super.* 25, 32 (App. Div.), certif.
den. 50 *N. J.* 92 (1967).

Prior to 1967, neither the Eminent Domain Act nor the Blighted Area Act contained any separate provision for the admeasurement of just compensation for land declared blighted and subsequently taken in condemnation proceedings. That was the state of the statutory law when this Court decided *Wilson v. Long Branch*, 27 *N. J.* 360, *cert. den.* 358 *U. S.* 873, 79 *S. Ct.* 113, 3 *L. Ed.* 2d 104 (1958). There seems to be a misconception abroad as to the significance and application of the *Wilson* decision to a pre-1967 amendments proceeding to condemn land which had been declared blighted. The suggestion is that *Wilson* held that even though a declaration of blight brought a substantial diminution in the value of the land involved, the loss was *damnum absque injuria* and was not recoverable in a subsequent condemnation action because prior to the 1967 amendments the statute required the value of the land taken to be determined as of the date of commencement of the action. *N. J. S. A.* 20:1–9. No such holding was made in *Wilson*.

*Wilson* did not involve a condemnation proceeding. Long Branch was not at that point seeking an actual taking of land declared blighted and so no issue was presented either as to the test to be applied in valuing blighted land then being condemned or as to the date as of which the valuation should be made.

*Wilson* involved an attack on the constitutionality of the Blighted Area Act, *N. J. S. A.* 40:55–21.1 *et seq.* It was alleged that the declaration of blight itself constituted a taking of property because as a result, prior to actual condemnation, its market value was substantially lessened immediately, and, with the threat of condemnation hanging over it, the property could not be sold or improved. It was argued that the statute was contrary to both the Federal and the State Constitutions because, without requiring acquisition of the property, it permitted a municipality to impair the value and restrict the use by a declaration of blight without compensating the owner for the loss. We

recognized as a practical matter that a declaration of blight caused a depreciation of the property involved, but we held that such diminution in value was not a taking in the constitutional sense. Since the redevelopment project might be abandoned by the municipality, it followed that no legally cognizable damage existed, at least until an *actual* taking occurred through exercise of the power of eminent domain. *Wilson v. Long Branch, supra,* 27 *N. J.* at 373–375. It is particularly important to note that since no actual condemnation proceeding was involved in *Wilson,* we were not called upon to decide what valuation rule would be applied in such an action. That is, no decision was either required, or asked or given, as to whether, in view of the undoubted diminution in value which ordinarily follows in the wake of a blight declaration, such land had to be valued as the statute then said, as of the commencement of the action, or whether the constitutional mandate for just compensation required valuation as of the date of the blight declaration.

Neither of the two *Lyons v. Camden cases,* 48 *N. J.* 524 (1967), and 52 *N. J.* 89 (1968) which followed *Wilson,* involved an action to condemn plaintiffs' lands which had been declared blighted by the City. Thus, as in *Wilson,* no problem of valuing the land was presented. The attack was on the constitutionality of the Blighted Area Act and on the procedural propriety of the blight declaration.

Subsequent to the *Wilson* decision and prior to the second *Lyons* case, obviously in recognition of the adverse effect of a declaration of blight on the value of the subject property, and because of a realization that in many cases the physical taking does not occur for years thereafter, the Legislature adopted the 1967 amendments which are under attack here.[1] Although the change effected by *L.* 1967,

---

[1]These amendments had been introduced in 1966 as Assembly Bills Nos. 204 and 252 with the following statement appended:

After an area has been declared blighted by a municipality there is a natural decline in property values resulting both from the desire of the inhabitants to immediately relocate and the natural reluctance on the part of buyers to purchase property within the af-

Chapters 217 and 218 was not in issue in *Lyons*, it was noted there:

> There can be no doubt that a declaration of blight ordinarily adversely affects the market value of property involved. This is unfortunate because in so many instances the physical taking of the property does not occur for a number of years. In the meantime the owner can only wait for that ultimate taking; there is usually no reasonable market otherwise open to him for sale of the property. Moreover, in the interim his good housekeeping incentive generally recedes and deterioration of the building sets in. 52 *N. J.* at 99.

These references to the *Wilson* and *Lyons* cases make clear the lack of substance in plaintiffs' claim of unconstitutionality of Chapters 217 and 218, *L.* 1967. The contention is that those decisions fixed the rules of just compensation for blighted-area condemnation cases, and that the Legislature has no power to adopt a different measure. In effect, they say that since under *Wilson* and *Lyons* decrease in value of land flowing from a declaration of blight is not compensable because it does not flow from a "taking," therefore, by judicial fiat, such decrease must be excluded as an element of the constitutional mandate for just compensation. As we have explained, the cited cases did not stand for the proposition that when the blighted land is *actually taken* through condemnation proceedings, the devaluation resulting from the blight declaration could not be taken into consideration in fixing just compensation for the owner. That problem was not decided. We did point to the inequity of visiting such

---

fected area. There is no time period during which these development agencies must acquire the property needed to carry out the proposed plan. The purpose of this bill is to assure a property owner the compensation to which he is morally entitled and to prevent the undue hardship which will accrue as a result of the inevitable diminution in property values between the date of the declaration of blight and the institution of condemnation proceedings.

The bills were ultimately passed by the 1967 Legislature as Assembly Bills Nos. 347 and 349. See also, Report of Eminent Domain Revision Commission, pp. 24–28 (April 15, 1965), citing *Wilson v. Long Branch, supra.*

a depreciation on the property owner and then making him wait for years before the property was actually taken and just compensation therefor was measured and given to him. By the 1967 amendments the Legislature recognized this inequity and issued its mandate that the property taken be valued as of the date of the blight declaration. It might well be that if the Legislature had not acted, this Court in a proper case would have declared that just compensation within the meaning of the Constitution required valuation as of the date of the declaration. See *Lyons v. Camden, supra,* 52 *N. J.* at 99; and compare *City of Buffalo v. Strozzi,* 54 *Misc.* 2d 1031, 283 *N. Y. S.* 2d 919 (Sup. Ct. 1967) with *City of Cleveland v. Carcione, supra,* 118 *Ohio App.* 525, 190 *N. E.* 2d 52. In fact, in Lyons we indicated that in some situations the statutory amendments only "partially rectified" the owner's plight. We said:

> "In fairness, it is not enough to assure the property owner that at some time, perhaps years hence, he will receive the market value of his property as of the date of the declaration of blight. Meanwhile, he and his family may well be imprisoned economically in the blighted area because he needs the capital invested in the blighted-area dwelling in order to purchase a new home elsewhere. Consequently, he must endure the deterioration that afflicts a neighborhood at an accelerated pace following a declaration of blight. In this context, equitable considerations call for actions by the public authority to effectuate the redevelopment plan with reasonable dispatch, * * *. 52 *N. J.* at 99.

■ As Judge Conford pointed out for the Appellate Division "[w]ide latitude is vested in the Legislature for regulation 'of the manner and method of exercising the power of eminent domain,'" subject only in the matter of valuation to the obligation to respect the constitutional order for payment of "just compensation." *Jersey City Redevelopment Agency v. Kugler, supra,* 111 *N. J. Super.* at 59; *Port of N. Y. Authority v. Heming,* 34 *N. J.* 144, 154, appeal dismissed 367 *U. S.* 487, 81 *S. Ct.* 1676, 6 *L. Ed.* 2d 1241 (1961). There is no precise and inflexible rule for the assessment of just compensation. The Constitution does not

contain any fixed standard of fairness by which it must be measured. Courts have been careful not to reduce the concept to a formula. The effort has been to find working rules and practical standards that will accomplish substantial justice such as, but not limited to, market value. *United States v. Cors, supra,* 337 *U. S.* at 332, 69 *S. Ct.* 1086, 93 *L. Ed.* at 1398; 27 *Am. Jur.* 2d, *supra,* § 267, pp. 55–57. For example, just compensation has been held to include the cost of constructing and maintaining additional fences made necessary by the construction of a road or railroad, where that expense fell on the landowner. *Inhabitants of Readington v. Dilley,* 24 *N. J. L.* 209 (Sup. Ct. 1853). In some situations the concept requires the payment of interest on the market value of the property taken, particularly where the public agency concerned has been guilty of unreasonable delay in completing the condemnation action, or where the owner is not only deprived of his property but also of the profits and increments from its use. *State v. Nordstrom, supra,* 54 *N. J.* 50; *New Jersey Highway Authority v. Ellis,* 24 *N. J.* 1, 7–9 (1957); *Acquackanonk Water Co. v. Weidmann Silk Dyeing Co.,* 99 *N. J. L.* 175, 178 (E. & A. 1923).

The provision of the Constitution for the payment of just compensation is primarily a restriction on the power of the Legislature for the benefit of the property owner. As we have said, it is not a specific measuring rule and there is a margin of discretion for courts and the Legislature in devising rules to insure such compensation. And it seems to be well recognized that while the lawmakers cannot adopt a measure which will detract from that compensation, they may prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution. *Daniels v. State Road Department,* 170 *So.* 2d 846 (Fla. Sup. Ct. 1964); *Stale v. Reid,* 204 *Ind.* 631, 185 *N. E.* 449, 451 (1933); 3 *Nichols, supra,* § 8.9, p. 255; 27 *Am. Jur.* 2d, *supra,* § 266, p. 53. The judicial power is a limitation upon the authority of the Legislature to fix a measure of damages detrimental to the owner's right

to just compensation as constitutionally guaranteed. See *State ex rel. Milchem Inc. v. Third Judicial Dist. Ct.,* 84 *Nev.* 541, 445 *P.* 2d 148, 152 (1968); *Keystone Associates v. Moerdler,* 19 *N. Y.* 2d 78, 278 *N. Y. S.* 2d 185, 224 *N. E.* 2d 700, 703–704 (1966); 3 *Nichols, supra,* § 8.9, p. 255.

 There is no suggestion, nor could there be sensibly, in the case before us that the rule of damages prescribed by the 1967 amendments detrimentally affects the property owner's right to just compensation. On the contrary, its purpose is to give recognition to and to overcome in substantial measure the devaluation of the owner's property that occurs between the date of declaration of blight and the actual taking of the land. What the Legislature has said — and we regard it as eminently equitable and entirely consistent with the mandate for just compensation — is that the value of land which has been declared blighted should be fixed at "no less than" the value as of the date of the declaration. We perceive no conflict between that minimum base and the Constitutional guaranty. Under the circumstances, the Appellate Division's view that Chapters 217 and 218, *L.* 1967, *N. J. S. A.* 20:1–9, and *N. J. S. A.* 40:55–21.10 are not violative of the constitutional mandate for payment of just compensation is affirmed. We agree also that the valuation rule prescribed thereby does not constitute an unconstitutional invasion of the authority of the judicial branch of the government to assess just compensation.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.