176 N.J. Super. 13 (1980)
422 A.2d 78
HOUSING AUTHORITY OF THE CITY OF NEWARK, A BODY CORPORATE AND POLITIC, PLAINTIFF-RESPONDENT,
v.
GIRETTA RICCIARDI, WIDOW, ROBERT RICCIARDI AND GEMMA RICCIARDI, H/W, WALTER RICCIARDI AND GIRETTA A. RICCIARDI, H/W, CHRISTINA M. KEGLEY AND JAMES A. KEGLEY, H/H, AND JOSEPH RICCIARDI, JR., SINGLE, AND 240 PRINCE STREET CORPORATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 29, 1980.
Decided October 8, 1980.
*15 Before Judges ALLCORN, KOLE and PRESSLER.
Cerreto & La Penna, attorneys for appellants (Michael A. Cerreto on the brief).
Emil W. Nardachone, General Counsel, Housing Authority of the City of Newark, attorney for respondent (Richard C. Lawten on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The appeal before us in this condemnation case raises an important issue regarding the appropriate date for the valuation *16 of real property located within an area which had been declared blighted but which was not included in any initial redevelopment plan for the area. More specifically, the question here is whether, where the value of such a parcel has declined between the date of the blight declaration and the date of the subsequent taking, the condemnee is required to prove that the decline in value was directly attributable to the declaration in order to obtain the statutory benefit of a declaration date value. The trial judge answered this question in the affirmative. We disagree.
The condemnees are the owners of three separate parcels of land in the City of Newark which, while not all contiguous, are all located in the same general vicinity and were functionally related in the operation of their wholesale and retail paint sales business. The main business premises were located on one of the parcels (main lot), one parcel was used for parking (parking lot) and the third was used for a garage and warehouse facility (garage lot). The parking lot was located within an area which was declared blighted by the City of Newark in August 1958 and which was included within the boundaries of an urban renewal project, R-6, planned by plaintiff Housing Authority of the City of Newark. The main lot and the garage lot were both located within a different area, which was declared blighted by the City of Newark in November 1961. The Housing Authority's initial urban renewal plan for that blighted area, R-32, was predicated, however, on a project area which encompassed only about 25% of the entire area declared blighted. As explained by the Housing Authority's Chief of Planning, the 1961 blight declaration
... defines an area which is substantially greater than the ... NJR-32 project area. A piece of the city was declared blighted in that connection. There is approximately four times the size of the R-32 project area. This has been the case since the early days of urban renewal where we anticipated a continuous flow of federal funds and we would stage our urban renewal activities by having a first project and then subsequent projects to cover the entire area being blighted.
*17 In any event, the garage lot was included within project R-32 from the outset. The main lot was excluded therefrom all during that project's planning phase, which was not completed until January 1969 when the Housing Authority and the Federal Government executed a loan and grant agreement. It does not appear from this record that any subsequent projects were pursued by the Housing Authority for the balance of that blighted area.
During the entire protracted planning phase of the project the condemnees continued the operation of their business, using all three lots as theretofore. In March 1969 the main building was completely destroyed by fire, resulting in the relocation of the entire business. The main building was uninsured at that time and not rebuilt, and the garage building, because it was frequently vandalized after the business relocation caused its vacancy, was ultimately demolished by the condemnees.
In 1972 the Housing Authority amended the project plan to include the now vacant main lot, and in April 1978 the Housing Authority filed its complaint in condemnation seeking the appointment of commissioners of condemnation to fix the value of all three lots. (The complaint included a fourth lot not here in issue, the parties having agreed on its value). Subsequent to the filing of the complaint, this proceeding was commenced in order to fix the valuation date to be applied by the commissioners, the condemnees urging that the proper date for all three lots was the blight declaration date and the Housing Authority urging that the proper date was the date of the filing of the complaint. The trial judge concluded that the parking lot and the garage lot were entitled to the declaration of blight date but that the main lot was to be valued as of the complaint date. The condemnees appeal and the Housing Authority does not cross-appeal.
In our view, the issue here posed is essentially one of statutory construction. The first of the statutes here relevant is N.J.S.A. 20:3-30, the general valuation provision of the Eminent Domain Act, which provides that

*18 Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee.
This section of the act must, however, be read together with N.J.S.A. 20:3-38, which provides in full that
The value of any land or other property being acquired in connection with development or redevelopment of a blighted area shall be no less than the value as of the date of the declaration of blight by the governing body upon a report by a planning board.
This mandate of N.J.S.A. 20:3-38 derives from the 1967 amendment of its repealed predecessor statute, N.J.S.A. 20:1-9 (see L. 1967, c. 218) and reiterates the same requirement imposed by the 1967 amendment of the Blighted Area Act, N.J.S.A. 40:55-21.1 et seq., N.J.S.A. 40:55-21.10 having been thereby amended to provide that in any condemnation action instituted for the purpose of acquiring land for a redevelopment project in a blighted area, "the value of any property sought to be acquired shall be fixed and determined to be no less than the value as of the date of the declaration of blight...."
There can be no question but that the effect of N.J.S.A. 20:3-38 and N.J.S.A. 40:55-21.10 is to qualify N.J.S.A. 20:3-30 by providing in respect of blighted area takings, alternative valuation dates, that is, either the date provided by the otherwise applicable provision of N.J.S.A. 20:3-30 or the date of the declaration of blight, on whichever date the value was higher. Nor can there be any question but that the motivation of the Legislature in providing this alternate valuation date was its perception that the ordinary and natural consequence of a declaration of blight is to trigger a decline in value. See, e.g., Jersey City Redevelop. Agency v. Kugler, 58 N.J. 374, 381-383 (1971); Lyons v. Camden, 52 N.J. 89, 99 (1968). Indeed, as pointed out in Jersey City Redevelop. Agency v. Kugler, which upheld the constitutionality of the 1967 legislation providing for the alternative valuation date, the Assembly Bills by which that legislation was introduced had appended to them this statement of purpose:

*19 After an area has been declared blighted by a municipality there is a natural decline in property values resulting both from the desire of inhabitants to immediately relocate and the natural reluctance on the part of buyers to purchase property within the affected area. There is no time period during which these development agencies must acquire the property needed to carry out the proposed plan. The purpose of this bill is to assure a property owner the compensation to which he is morally entitled and to prevent the undue hardship which will accrue as a result of the inevitable diminution in property values between the date of the declaration of blight and the institution of condemnation proceedings. [58 N.J. at 381-382, n. 1]
Because the alternative valuation date is based on the presumption that a blight declaration will adversely affect value, the Legislature did not impose on condemnees the obligation to prove that an actual decline in value between the declaration date and the taking date was in fact attributable to the declaration. Nor did it, conversely, offer condemnors the defensive opportunity to prove that an actual decline was attributable to causes other than the declaration. Rather, it chose to establish an absolute standard to be uniformly applied to all blighted area takings on the altogether reasonable theory that that standard, in the overwhelming majority of cases, would assure the property owner of no more than his constitutional right to just compensation. Certainly as to those cases, application of an absolute standard has the notable virtue of producing a just result without the expenditure by the litigants and the courts of the resources which would otherwise be required to prove or disprove a causal connection between the blight declaration and the decline in value. Thus, the Legislature may be inferred to have determined as well that if an individual property owner, from time to time, may obtain more favorable compensation as a result of uniform application of the absolute standard, such an occasional occurrence is not only outweighed by the advantages of uniform application but also offset by the rule of law which immunizes condemnors from the requirement of paying any compensation for diminution of value resulting from a blight declaration where there is never a subsequent taking and the diminution is insufficient to meet the standard of destruction of beneficial use. Cf. Washington Market Enterprises v. Trenton, *20 68 N.J. 107, 122 (1975). Indeed, the Supreme Court in Jersey City Redevelop. Agency, supra, fully recognized these consequences of the alternative valuation date and specifically declined to hold that they in any way affected the constitutionality of that provision. As the court in this context observed
The provision of the Constitution for the payment of just compensation is primarily a restriction on the power of the Legislature for the benefit of the property owner.... And it seems to be well recognized that while the lawmakers cannot adopt a measure which will detract from that compensation, they may prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution.... The judicial power is a limitation upon the authority of the Legislature to fix a measure of damages detrimental to the owner's right to just compensation as constitutionally guaranteed....
There is no suggestion, nor could there be sensibly, in the case before us that the rule of damages prescribed by the 1967 amendments detrimentally affects the property owner's right to just compensation. On the contrary, its purpose is to give recognition to and to overcome in substantial measure the devaluation of the owner's property that occurs between the date of declaration of blight and the actual taking of the land. What the Legislature has said-and we regard it as eminently equitable and entirely consistent with the mandate for just compensation-is that the value of land which has been declared blighted should be fixed at "no less than" the value as of the date of the declaration. We perceive no conflict between that minimum base and the Constitutional guaranty. [58 N.J. at 384-385]
In view of the foregoing, the applicability here of the declaration of blight date for valuation would seem to be beyond argument. It was, however, the holding of the trial judge that in this case the blight declaration was in itself insufficient to confer upon the condemnees the benefit of that alternate valuation date for the reason that the parcel in question had not been initially included within the project area earmarked for acquisition. It was his view that in that circumstance, the condemnees were not entitled to what is, in effect, the conclusive statutory presumption that the decline in value is attributable to the blight declaration but must actually prove the causal connection. We disagree since we are unable to perceive either statutory or economic justification for the imposition of any such qualification on the statutory presumption.
*21 As a conceptual matter, a declaration of blight represents a governmental action which is independent of and separate from the adoption and execution of a development or redevelopment plan for the area declared blighted. There is, moreover, nothing in the Blighted Areas Act, supra, which conditions the adoption of a declaration of blight resolution on the preexistence of a redevelopment plan or which even requires that a redevelopment plan ever be thereafter promulgated. Indeed, N.J.S.A. 40:55-21.10 has, from its original enactment, specifically provided that following a declaration of blight, a municipality need never take steps to acquire the property within the blighted area. See, e.g., Wilson v. Long Branch, 27 N.J. 360 (1958), cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958). It is true that that statutory section was amended by L. 1975, c. 276, to condition a municipal taking of blighted property upon the approval of a redevelopment plan, but even that amendment does not require that there must even be a redevelopment plan for a blighted area. And where there is a redevelopment plan, it is always subject to revision, amendment or abandonment, and, typically, as was the case here, years elapse before it is finalized and its execution is undertaken, if undertaken at all.
Our point is that it is not necessarily any proposed or adopted redevelopment plan for the area but rather the declaration of blight itself which is the act of independent significance engendering a decline in value. This is primarily so because of the economic uncertainty which is the inevitable result of the blight declaration. Clearly, the effect of the declaration is not the taking of land but only the raising of the economically dislocating specter of a possible taking at some undetermined indefinite future time. If a prompt taking were a reliable consequence of a blight declaration, stability of property values would be maintained rather than the converse. In our view, therefore, the salutary effect of the alternative valuation date, which we regard as mandated by both N.J.S.A. 20:3-38 and 40:55-21.10, is not only to afford substantial justice to property *22 owners but also to impose upon municipal governing bodies an incentive for greater responsibility and circumspection in the exercise of their blight declaration authority. We, therefore, construe these statutes to mean exactly what they say, namely, that when there is an eventual taking of property in an area which has been declared blighted, the property owner is entitled to no less than the value of his land on the date of the declaration.
The order appealed from is reversed insofar as it is inconsistent herewith, and the matter is remanded for the conduct of the commissioners' valuation hearing.