**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3518-23

JERSEY CITY
REDEVELOPMENT AGENCY,

    Plaintiff-Appellant,

v.

TEAM RHODI, LLC,

    Defendant-Respondent.

_____

        Argued December 19, 2024 – Decided May 23, 2025

        Before Judges Mawla, Natali, and Vinci.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4592-18.

        Paul V. Fernicola argued the cause for appellant (Paul V. Fernicola & Associates, LLC, attorneys; Paul V. Fernicola, of counsel and on the briefs; Robert E. Moore, on the briefs).

        Anthony F. DellaPelle argued the cause for respondent (McKirdy, Riskin, Olson & DellaPelle, PC, attorneys; Anthony F. DellaPelle, of counsel; Michael Realbuto, on the brief).

PER CURIAM

By leave granted, plaintiff Jersey City Redevelopment Agency (JCRA) appeals from a June 7, 2024 order denying its motion in limine to bar defendant Team Rhodi, LLC (Team Rhodi) from presenting to the jury the opinions contained in the expert appraisal report of Maurice J. Stack, II, MAI, CRE. For the reasons that follow, we reverse and remand for further proceedings.

I.

Team Rhodi is the former owner of property identified as "Block 19003, Lots 1-7 on the tax map of the City of Jersey City and located at 323, 319-21, 317, 315, 313, 311[,] and 309 Johnston Avenue in Jersey City." JCRA instituted this condemnation action by filing a verified complaint on November 16, 2018. The court subsequently entered an order to show cause requiring Team Rhodi to address why the following judgments should not be entered against it: (1) "[a]n Order for Possession and a final judgment that [JCRA] ha[d] duly exercised its power of eminent domain;" and (2) "in the event any party contest[ed] the estimated compensation for any of the [s]ubject [p]roperties, judgment should not be entered appointing three . . . disinterested commissioners . . . ."

The court, however, stayed the matter pending Team Rhodi's appeal of the dismissal of its prerogative writ action challenging the adoption of the

redevelopment designation and JCRA's authority to condemn its property. We affirmed the court's decision, concluding Team Rhodi's appeal of the blight designation was time-barred and finding "[t]he trial court did not abuse its discretion by declining to enlarge the period of time provided in Rule 4:69-6(a) by more than fifteen years." Team Rhodi, LLC v. Jersey City Redevelopment Auth., No. A-3515-17 (App. Div. July 29, 2020) (slip. op. at 12-16).

After we denied Team Rhodi's appeal, the court entered an order appointing commissioners and concluded JCRA was "duly vested with and ha[d] duly exercised its powers of [e]minent [d]omain to acquire the subject property of [Team Rhodi]." The appointed commissioners subsequently filed their report with the court, and Team Rhodi filed a notice of appeal from the award with the Law Division. The court granted Team Rhodi's motion, set the date of valuation on June 3, 2019, and compelled JCRA to provide Team Rhodi with an updated appraisal report of the property.

JCRA's expert appraiser, Mark W. Sussman, MAI, CRE, explained in his report that "[t]he prior zoning for the subject property was R-2 Multi-Family Attached Housing (four stories or less) District. The current zoning is Morris Canal Redevelopment Area, Transit Oriented Development (TOD) West District." According to Sussman, under the R-2 zoning scheme, "[t]he

maximum permitted density . . . is [fifty-five] dwelling units per acre, and the maximum permitted building height is [four] stories and [forty] feet."

Sussman concluded the highest and best use of the property as of June 3, 2019, was "development for multi-family residential use, and there is a reasonable probability of a zone change or variance(s) to allow the subject property to be developed at a density of 200 units per acre . . . , [which] results in a total potential yield of [eighty-seven] residential units." Based upon that use, Sussman concluded the estimated market value of the property was $2,870,000. As part of his analysis, Sussman explained the property had yet to receive the required zone change or use variances that would permit the highest and best possible use. Thus, "in order to account for the subject property's added risk and expense associated with obtaining the necessary zone change or use variances, a downward adjustment was applied to all of the comparable sales . . . ."

With respect to the relevant zoning scheme for the property, in his report, Stack explained the Jersey City Municipal Council replaced the R-2 zoning scheme with the Morris Canal Redevelopment Plan. According to Stack, under the Morris Canal Redevelopment Plan, "[t]he maximum height for properties in Block 19003 . . . is [eight] stories or [ninety] feet and an Affordable Housing

4

Bonus for Block 19003 permits developers the right to a maximum density of 200 units/acre . . . ."

Given Stack's belief regarding the applicability of the Morris Canal Redevelopment Plan, he concluded the highest and best possible use of the property was "an [eight] story, mixed-use building with a gross floor area of 125,000+/- [square feet] . . . that facilitates [ninety-five] residential units . . . , and is complemented by ground floor commercial space, attractive amenities[,] and secure parking." In calculating the property's estimated market value, Stack explained

> a prospective buyer would acquire the subject property without approvals based on the reasonable probability that an as of right (AOR) development plan requiring modest deviations and variances would be approved by the Jersey City Planning Board . . . .
>
> Nonetheless, an appropriate adjustment is warranted to account for an incremental value attributable to approvals secured by the seller in each transaction.

Based upon his analysis, Stack determined the market value of the property as of the date of valuation was $7,200,000.

In addition to Stack's appraisal report, Team Rhodi submitted an expert report from professional planner Jeff Wenger to "provide an opinion as to what development approvals would have been reasonably probable to have been

approved by the City of Jersey City for [the property] as of June 3, 2019." In an effort to spur economic growth in Jersey City, Wenger explained the Division of City Planning "did away with the idea of fixed zoning." Wenger characterized the current zoning scheme as "negotiated zoning."

Given Jersey City's need for residential housing and the property's proximity to public transportation, Wenger believed "it would be difficult for the Division of City Planning to justify keeping the old R-2 zoning regulations in place and not reconsider how much housing could be created on the site." He ultimately concluded "the most likely approval to occur, [was] with a maximum building height of [eight] stories, ground floor retail use, and up to 230 units per acre[,]" or ninety-eight units in total.

At his deposition, Stack provided the following testimony with respect to his use of the Morris Canal Redevelopment Plan as the basis for his market value analysis:

> Q. Based on your conclusion contained on [p]age [twenty-one] that the Morris Canal Redevelopment Plan extinguished the subject property's prior zoning, would I be correct that you performed no type of development yield under the prior R-2 zoning classification for the subject property?
>
> A. The . . . prior zoning, it is no longer relevant or has not been relevant in the [twenty] years, roughly, [twenty] years. The . . . underlying zoning has no

[e]ffect on . . . any approvals for any property in Jersey City as . . . the process has become a re-zoning. And all of it is in keeping with the goals of the March plan and updates and the re-examinations that are being done. So everything is moving forward through the . . . redevelopment plan process.

Q. Why do you believe, in your professional opinion, that the prior zoning classification, R-2, is no longer relevant in estimating or determining just compensation for the taking of the subject property?

A. The highest and best use is . . . to be determined based on what the market would believe to be reasonably probable as an approval for a site that has the physical characteristic and location, steps away from a light rail station. And I can tell you, from my decades of experience appraising property in Jersey City, that no buyer would . . . consider and no seller would consider any . . . use that would be four stories or less in this neighborhood.

Similarly, when questioned at his deposition, Wenger explained he also did not consider the R-2 zoning scheme in preparing his report:

Q. In arriving at your opinion that an eight-story development with [ninety-eight] units would be granted as of June 2019, what zoning classification did you utilize?

A. I did not use a zoning classification. . . .

Q. Did you perform an analysis as to the type of development that was reasonably probable applying the R-2 zoning classifications to the subject property?

7

A. I am aware of the R-2 zoning. And I did not think that that would be applied were a development to take place there.

Q. Would it be accurate to state that you did not perform an analysis in order to form an opinion as to the reasonable probable development that would be approved at the subject property under the R-2 zoning classification as of June 3rd, 2019?

A. Well, yes. I did analyze the R-2 zoning. And I came to the conclusion that that was not likely to be used.

When questioned about what variances would be required to construct the proposed eight-story, ninety-eight-unit development, Wenger explained "[p]retty much, every aspect of the building would be a variance. It does not conform to the R-2."

After the close of discovery and before the matter proceeded to trial on the issue of just compensation, JCRA filed a motion in limine to bar Team Rhodi from presenting Stack's appraisal opinions to the jury. The court heard oral arguments on June 7, 2024, denied the motion, and issued a conforming order that same day.

The court explained under State v. Caoili, 135 N.J. 252, 264-64 (1993), "[a] critical inquiry is the reasonable belief by a buyer and seller engaged in voluntary negotiations over the fair market value of property that a [zoning] change may occur and will have an impact on the value of the property

regardless of the degree of probability." It also stated in cases where a jury will make the just compensation determination, "the trial court should examine the evidence proffered in support of the reasonable probability of a zoning change and determine whether it can render its required . . . [determination] based on the papers. Only then is the matter submitted to the jury." Next, the court cited Jersey City Redevelopment Agency v. Kugler, 58 N.J. 374, 378-79 (1971), and explained that under the project influence doctrine, "[a]ny increase or decrease in value attributable to the government project for which the property is to be acquired may not be considered in calculating just compensation . . . ."

Relying on these legal principles, the court denied JCRA's motion and explained:

> Stack's analysis this [c]ourt finds in reaching his ultimate conclusion, even though that ultimate conclusion may be disagreed with by . . . [JCRA], is procedurally proper under the circumstances.
>
> The [c]ourt, therefore, finds that the automatic consideration and application of what this [c]ourt also finds is an outdated R-2 zoning certainly overlooks that basis and that a [prospective] purchaser would certainly acknowledge, not [that] the zoning, is not the R-2 zone but certainly it was done comprehensively would be the zoning governed by the Morris [Canal] [R]edevelopment [P]lan. That this court finds is the operative zoning for the property as . . . of the date of []valuation. Any issues, therefore, that have to do with the calculus on the ultimate fair market value that is

9

determined was based . . . properly on the Morris Canal [R]edevelopment zone and not the R-2 zone.

At the motion hearing, the court also denied JCRA's request for a stay pending appeal. Subsequently, JCRA filed a motion seeking leave to file an interlocutory appeal, which we granted.

JCRA argues the court's ruling "that the Morris Canal Redevelopment Plan is the operative zoning in place as of the [d]ate of [v]aluation contradicts well established condemnation law," particularly the project influence doctrine. Citing Kugler, 58 N.J. at 379, JCRA contends the project influence doctrine "stands for the proposition that the proper basis for determining just compensation is the fair market value of the property, on the [d]ate of [v]aluation, disregarding either the depreciating threat of or the inflationary reaction to the proposed redevelopment project." (Emphasis omitted).

Under the project influence doctrine, "[j]ust compensation does not include any enhancement in value which would not exist but for the publicly-funded public project." (Emphasis omitted). JCRA contends the court's ruling violated this doctrine because the redevelopment plan is the public project and "the Morris Canal Redevelopment Area would not exist but for the Jersey City's redevelopment designation." (Emphasis omitted).

10

JCRA further argues Team Rhodi's "appraisal report must be barred from presentation to the jury as unduly speculative." It contends Stack's report should be barred because he applied "the incorrect zoning when arriving at his valuation conclusion." Citing Stack's deposition testimony, JCRA states he "confirmed during his deposition that an [eight]-story mixed[-]use building would only be permitted under the Morris Canal Redevelopment Plan zoning and not permitted under the R-2 zoning[.]" Specifically, JCRA contends Stack's appraisal report "failed to properly account for the risk and costs associated with obtaining such variances/approvals to construct the proposed eight-story multi-purpose building."

Relying upon County of Monmouth v. Hilton, 334 N.J. Super. 582 (App. Div. 2000), JCRA maintains Stack's report fails to provide the jury with the information necessary to determine "what premium would a willing buyer pay for the [p]roperty which, as of the [d]ate of [v]aluation of June 3, 2019, had no development approvals or variances." In further support of its argument, JCRA highlights the deposition testimony of Wenger who confirmed that "[p]retty much, every aspect of the building would be a variance. It does not conform to the R-2." (Emphasis omitted).

11

II.

The exclusion or admission of an expert's testimony or report is "committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015) (citing State v. Berry, 140 N.J. 280, 293 (1995)). However, we review de novo the judge's pure determinations of law, State v. Mann, 203 N.J. 328, 337 (2010), as well as the application of legal principles to factual findings, State v. Harris, 181 N.J. 391, 416 (2004). Indeed, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Both the United States and New Jersey Constitutions provide the government shall not take private property without "just compensation." U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."); N.J. Const. art. I, ¶ 20 ("Private property shall not be taken for public use without just compensation."). As such, when the government exercises its powers of eminent domain and acquires private property, the property owner is entitled to just compensation, defined as "the fair market value of the property as of the date of the taking, determined by what a willing buyer

12                                                                          A-3518-23

and a willing seller would agree to, neither being under any compulsion to act." Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 136 (2013) (quoting State v. Silver, 92 N.J. 507, 513 (1983)).

As noted, under the project influence doctrine, "the proper basis of [just] compensation is the value of the property as it would be at the time of the taking . . . disregarding either the depreciating threat of or the inflationary reaction to the proposed public project." Kugler, 58 N.J. at 379; see also Jersey City Redevelopment Agency v. Costello, 252 N.J. Super. 247, 254 n.4 (App. Div. 1991) ("In general, a fair market value determination should not be based upon enhancement caused by the very project for which condemnation is sought."). The project influence doctrine thus requires that when just compensation is determined as of the date of a taking, only market factors unrelated to the condemnation action can be considered, despite the general requirements for determining fair market value.

Just compensation is defined as "the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." Borough of Saddle River, 216 N.J. at 136 (quoting Silver, 92 N.J. at 513). The property's "highest and best use" is the most relevant factor to determine the fair market value,

13

although "all reasonable uses of the property" should be considered. Caoili, 135 N.J. at 260.

In State by State Highway Commissioner v. Gorga, 26 N.J. 113, 116 (1958), our Supreme Court explained in determining the fair market value of a condemned property, the permissible uses under the applicable zoning ordinance at the time of taking "bear crucially upon that value." The Court elaborated, however, "[t]he jury may consider the value of the property if it were rezoned but only in determining the premium a willing buyer would pay in addition to the value of the property under the existing ordinance." Borough of Saddle River, 216 N.J. at 137-38 (citing Gorga, 26 N.J. at 117).

Subsequently, the Caoili Court developed a two-step framework to prevent "'unbridled speculation' regarding the fair market value" of a property. 135 N.J. at 264 (quoting Gorga, 26 N.J. at 116). That two-step process proceeds as follows:

> [A] court first must determine whether there is sufficient evidence to support the conclusion that a zoning change is "reasonably probable." Id. at 265. That evidence must "indicat[e] beyond a mere possibility that a change of use is likely and, further, that such a change would be an important factor in the valuation of the property." Id. at 264. The court performs this "gatekeeping function by screening out potentially unreliable evidence and admitting only

14

A-3518-23

evidence that would warrant or support a finding that a zoning change is probable." Ibid. . . .

After that determination is made, the jury determines in a second step whether "a buyer and seller engaged in voluntary negotiations over the fair market value of the property [would reasonably believe] that a change may occur and will have an impact on the value of the property." Id. at 264-65. This determination does not require the jury to find that the zoning change is probable, nor to determine the degree of probability of the zoning change. Ibid. Instead, "even though the parties to a voluntary transaction may not believe that a zoning change is more likely than not, their belief that there may be a change should be taken into account if that belief is reasonable and it affects their assessment of the property's value." Id. at 265 (internal quotation marks and citation omitted). The parties' belief "may be considered in fixing just compensation in light of the weight and effect that reasonable buyers and sellers would give to such evidence in their determination of the fair market value of the property." Ibid. [The] Court in Caoili concluded that a jury could consider future variance approval and potential subdivision of the property in the valuation analysis. Id. at 265, 267.

[Borough of Saddle River, 216 N.J. at 138-39 (first and third alterations in original).]

In Hilton, we applied this two-step framework to determine whether a jury may take into consideration the effect of a future assemblage of properties to determine the property's fair market value. 334 N.J. Super. at 584. In that case, the property at issue was a protected prior non-conforming use contiguous with three other non-conforming vacant lots, all separately owned. Id. at 585-86.

15

Monmouth County's expert appraiser believed the property's fair market value was $295,000, and he considered "the highest and best use of the subject premises was its continuation as a protected pre-existing non-conforming five-family dwelling." Id. at 588.

The property owner's expert, however, considered the fair market value of the property to be $729,000. Id. at 589. In arriving at this conclusion, the expert appraiser believed the highest and best use of the property was "a mid-rise building containing [ninety-two] residential units." Ibid. Crucially, the appraiser "proceeded . . . as if an assemblage of the four lots had already occurred as of the date of taking." Ibid.

We concluded "appraising the value of defendant's property as if a four-lot assemblage had already taken place as of the date of taking . . . constituted a fundamentally untenable and legally unsupportable approach." Id. at 590. We explained "[t]he distinction between enhancing market value and constituting the basis of market value is, in our view, critical, and it is that distinction that rendered defendant's appraisal methodology legally defective." Id. at 591.

Applying the aforementioned legal principles, we conclude the court misapplied its discretion in denying JCRA's motion to bar Stack's appraisal report as written. Here, because the Morris Canal Redevelopment Plan is the

16

public project for which Team Rhodi's property was condemned, we are convinced the court erred as a matter of law and violated the project influence doctrine when it categorically concluded that the redevelopment plan is the operative zoning scheme in determining just compensation.

Although the Morris Canal Redevelopment Plan, in particular the TOD West District, was the property's applicable zoning at the time of the taking,[1] Gorga, 26 N.J. at 116, "the proper basis of [just] compensation is the value of the property as it would be at the time of the taking . . . disregarding either the depreciating threat of or the inflationary reaction to the proposed public project." Kugler, 58 N.J. at 379 (emphasis added); see also Costello, 252 N.J. Super. at 254 n.4 ("In general, a fair market value determination should not be based upon enhancement caused by the very project for which condemnation is sought."). In other words, the relevant question is what the fair market value of the property would have been absent "anything done pursuant to the announcement of [the Morris Canal Redevelopment Plan], and in implementation thereof." Hous. Auth. of Atl. City v. Atl. City Exposition, Inc., 62 N.J. 322, 330 (1973).

---

[1] Although both parties' expert appraisers agree the Morris Canal Redevelopment Plan, in particular the TOD West District, replaced the underlying R-2 zoning in 1999, neither party has included a copy of the redevelopment plan in the appellate record.

17

By categorically stating that "[a]ny issues . . . that have to do with the calculus on the ultimate fair market value . . . is . . . properly [based] on the Morris Canal [R]edevelopment [Plan] and not the R-2 zone[,]" the court disregarded the project influence doctrine by not considering the project's influences on the property's fair market value. Although no party disputes the R-2 zone was superseded by the Morris Canal Redevelopment Plan at the time of the taking, it may nonetheless be relevant to the issue of just compensation. Among other reasons, the R-2 zone is informative to the extent of the potential inflationary increase to the property's value caused by the Morris Canal Redevelopment Plan and its accompanying zoning changes, and the reasonableness of any attendant evaluation.

Further, Stack's appraisal report is based upon the erroneous premise that the Morris Canal Redevelopment Plan and its zoning requirements apply without limitation. Stack's opinions did not parse the market forces that independently could have raised the property's value had the Morris Canal Redevelopment Plan not occurred. Instead, he made assumptions about the property's highest and best use based upon expectations insofar as they were altered by the redevelopment plan.

By applying the Morris Canal Redevelopment Plan's zoning without consideration of the project influence doctrine, Stack ignored the settled rule of law factoring out the project's influences on the property's fair market value. See Kugler, 58 N.J. at 379; see also Costello, 252 N.J. Super. at 254 n.4. His report thus "constituted a fundamentally untenable and legally unsupportable approach." See Hilton, 334 N.J. Super. at 590.

With that said, nothing in this opinion should be interpreted as preventing Team Rhodi from arguing to the jury the reasonable probability of obtaining use variances or a zoning change. See Caoili, 135 N.J. at 265 (noting "in determining the fair market value of condemned property as a basis for just compensation, the jury may consider a potential zoning change affecting the use of the property"); Borough of Saddle River, 216 N.J. at 140 (explaining a "jury may consider the probability of [a] future zoning change or variance approval in determining the premium a buyer and seller would fix to the property"). We simply conclude in calculating the property's fair market value, consideration must be given to the project influence doctrine and the principle that "a fair market value determination should not be based upon enhancement caused by the very project for which condemnation is sought." Costello, 252 N.J. Super. at 254 n.4

We are unpersuaded by Team Rhodi's contention that it was improper for JCRA to challenge the admissibility of Stack's report through a motion in limine. As noted by the <u>Caoili</u> Court, the judge is to act as a "gatekeep[er] . . . screening out potentially unreliable evidence and admitting only evidence that would warrant or support a finding that a zoning change is probable." 135 N.J. at 264. In order for the court to perform this gatekeeping function, it was proper for JCRA to contest the admissibility of Stack's report through a motion in limine. <u>See</u> <u>N.J. Transit Corp. v. Franco</u>, 447 N.J. Super. 361, 381 (App. Div. 2016) ("[W]e reject the trial court's reasons for denying plaintiff's motion in limine to exclude the opinions of defendants' experts, which were inadmissible because they were legally inadequate and legally inaccurate.").

Further, we are unconvinced by Team Rhodi's argument that Stack's report is legally proper because it is "based on the reasonable probability that a[] development plan for a [ninety-five]-unit multi-family requiring modest deviations and variances would have probably been approved . . . and then discounts the value where appropriate to reflect that the [p]roperty has no approvals." This argument fundamentally ignores the fact Stack did not account for the enhancement caused by the Morris Canal Redevelopment Plan in conducting his fair market value analysis. <u>See</u> <u>Kugler</u>, 58 N.J. at 379.

20

We note our opinion is limited to the propriety of Stack's report, as his opinions were the exclusive basis for JCRA's motion and the sole subject of the court's decision. While in their merits briefs the parties do address in a limited fashion the propriety of Wenger's report, we decline to address the issue for the first time on appeal. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 483 (2012) (noting "our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest" (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973))).

Finally, on remand, we deem it in the interests of justice to afford Team Rhodi an opportunity to serve new expert appraisal reports that comply with Gorga, Kugler, and the other aforementioned authorities; for JCRA to file rebuttal reports; and for the parties to engage in supplemental discovery as appropriate. See Est. of Spencer v. Gavin, 400 N.J. Super. 220, 255-56 (App. Div. 2008). We offer no comment as to what Team Rhodi's experts may include in any supplemental report, except that the fair market value determination be informed by the project influence doctrine, and the report must otherwise comply with the requirements contained in N.J.R.E. 703.

Reversed and remanded for further proceedings in accordance with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

22                                                    A-3518-23