STOKER, Judge.
This is an expropriation suit. The plaintiff, State of Louisiana, Department of Transportation and Development (DOTD), expropriated .292 acres of an 88.61-acre tract of land in St. Landry Parish belonging to the defendant, Georgie Boagni Walter, on July 16, 1981. The expropriation was done pursuant to the “quick-taking” statute, LSA-R.S. 48:441, et seq. The land *564 expropriated is part of the right of way for Interstate Highway 49 (1-49). DOTD deposited the sum of $1,300 into the registry of the court as just compensation for the land taken. On August 11, 1981 the defendant withdrew the sum on deposit in the registry of the court. Thereafter, on November 2, 1981, the defendant answered DOTD’s expropriation petition seeking an increase in the amount deposited as just compensation and severance damages to the remaining 88.318 acres in the amount of $541,590, plus interest and attorney’s fees.
After trial on the merits, the trial court rendered judgment in favor of Georgie Boagni Walter and against DOTD awarding just compensation for the property taken in the amount of $335 and awarding the sum of $91,409.13 as severance damages, for a total of $91,744.93, less the previous deposit of $1,300. Defendant was also awarded attorney’s fees in the amount of $22,611.23 and an expert witness fee of $2,750 was taxed as costs.
DOTD has appealed the judgment of the trial court. The issues presented in this appeal concern the value of the property taken and the value of the severance damages to the remaining property. Georgie Boagni Walter has neither appealed nor answered DOTD’s appeal.
PACTS
The property in question is part of a larger tract of land which belonged to Dr. C.F. Boagni. After Dr. Boagni’s death, the property was partitioned in 1967 by the Boagni heirs. The partitioned property consists of six contiguous tracts of land situated approximately four miles northwest of the town of Washington in St. Landry Parish. Mrs. Walter’s property is the southernmost tract and is bounded on the west by Bayou Cocodrie, to the north by Boagni property, and to the east and south by Thistlewaite properties. At the time of the taking, Mrs. Walter’s property was a low-lying wooded tract subject to inundation from Bayou Cocodrie with no improvements except a fence at its boundary. The only public utility available to the property was electricity. Legal access to Mrs. Walter’s property from the nearest public road was by rights of way through abutting properties to the north and east.
The 1-49 right of way comes through all of the Boagni properties, Mrs. Walter’s property having the least amount of property expropriated. 1-49 is a controlled access facility which prevents the property owners along the right of way from using the highway as a means of ingress or egress from their property. The construction of 1-49 severed the only legal access to Mrs. Walter’s property. However, a bridge on 1-49 was constructed near the northernmost Boagni tract, over an old logging road, which theorectically would give the Boagnis access to their property.
HIGHEST AND BEST USE OF THE LAND TAKEN
DOTD contends that the trial court erred in determining that the highest and best use of the subject tract was agricultural, and in doing so relied erroneously on the testimony of the defendant’s expert, John Lejeune.
Mr. Lejeune testified that the property had multiple highest and best uses, those being (1) timber, (2) agricultural, and (3) future recreational purposes. It was Mr. Lejeune’s opinion that the property could be used for timber purposes until such time as the timber became merchantable and marketable. Mr. Lejeune further concluded that when the timber had been harvested the owner would have put the land gradually into agricultural use. This would be cost effective to the owner because, when the timber became marketable, the timber company would clear the property so that it would not be a cost item to the property owner. Therefore, it seems that Mr. Lejeune’s opinion was that the highest and best use entailed (1) harvesting the timber and then (2) converting the property to agricultural use. Mr. Lejeune did not know how much merchantable timber was on the land, but estimated that the value of the merchantable timber would have to be $350 to $500 per acre before a timber company would harvest it. Mr. Le- *565 jeune did not take into account in his appraisal the cost of clearing the property for agricultural use, but in response to the trial court’s inquiry estimated the cost to be approximately $350 per acre.
Based upon his examination of comparable sales in the area, Mr. Lejeune opined that the fair market value of the property was $1,500 per acre at the time of the taking.
By contrast, DOTD’s expert, James McNew, testified that the highest and best use of the property was as timberland with a recreational potential. It was his opinion that at least 70% of the property did not have good soil for agricultural purposes and because of its size, flooding problems and the nature of its access through abutting properties, it would be impractical and not economically feasible to cultivate it. Based upon his examination of comparable sales of timberland, Mr. McNew appraised the fair market value of the property at $700 per acre.
The trial court, after weighing the testimony and evidence presented by the two experts, concluded in its reasons for judgment as follows:
“Mr. LeJeune has found that the highest and best use of this property was, I think, timber and agriculture. I think that Mr. McNew testified for the State consistent with the testimony that he gave in the other case and found that the highest and best use were timber and I think recreation. There is only one highest and best use unless there are two uses to which the land may be put to at the time of the taking , which when considered would produce the same value. Otherwise, there can only be one highest and best use that would produce the top dollar for that property depending upon the manner in which the use of it is employed in the not too distant future. I’m satisfied from the evidence that the highest and best use to which this land could be put would be farming. I’m satisfied that it was — if farming operations were available on similar land in the area and that while this land was being used for recreational purposes or timber that that is just one factor to be considered. It’s present use, it’s not controlling.”
Based upon this determination of highest and best use, the trial court accepted Mr. Lejeune’s valuation of the property at $1,500 per acre. However, cognizant of the fact that the property would have to be cleared of timber, the trial court subtracted the $350 per acre cost to clear the land estimated by Mr. Lejeune. The court then arrived at a value per acre of $1,150. The trial court concluded that the clearing of the property for agricultural use was warranted by the testimony of Mr. Lejeune that the property would have to have at least $350 to $500 of merchantable timber to entice a timber company to harvest it. The court arrived at a timber value of $172 per acre, while Mr. McNew testified the timber had a value of $205 per acre. Clearly neither value meets the threshold testified to by Mr. Lejeune. Therefore, the trial court concluded the highest and best use was agricultural.
DOTD has put at issue, by way of this appeal, the trial court’s acceptance of the opinions and testimony of Mr. Lejeune and the rejection of Mr. McNew’s opinion and testimony. We find no manifest error on the part of the trial court. As this court stated in Faustina Pipe Line Co. v. Hebert, 469 So.2d 483, 487 (La.App. 3d Cir.), writ denied, 474 So.2d 1295 (La.1985):
“If an expert is qualified to testify at all, the weight of that expert’s testimony, like all testimony, depends on the fact-finder’s assessment of its logic, consistency, reasonableness and credibility. It is distinctly within the province of the trial fact-finder (here, the trial judge) to assess the credibility of expert witnesses and the weight to be assigned to their testimony. The evaluations of and conclusions drawn from competing expert testimony will not be disturbed on appeal in the absence of manifest error.” (Citations omitted)
The State urges that we should accept Mr. McNew’s opinion which the State urges establishes the following: (1) 70% of the property floods, (2) an expensive levee system would be required to permit farming, *566 (3) 88 acres is too small to be economically farmed, and (4) farming the land would require a permit from the U.S. Corps of Engineers.
The trial court sustained the defendant’s objections to certain testimony by Mr. McNew and ruled that McNew was not qualified to testify to certain facts or interpret data from maps. These facts and data were part of McNew’s informational basis for his opinion. Mr. McNew was permitted to give his testimony under a proffer of evidence. As we read the record and the trial judge’s oral reasons for judgment, it is clear that he gave little credence to the testimony and opinion of Mr. McNew. While expert witnesses are given wide latitude with respect to gathering information and data on which they base their opinion, we cannot say the trial judge was clearly wrong in not giving credence to the opinion of the State’s expert. This is especially so as the trial judge was familiar with the land in the area and made an on-site inspection of the Boagni property.
We find no manifest error in the trial court’s finding and holding with reference to the highest and best use of the tract in question.
ACCESS TO THE REMAINING PROPERTY
DOTD argues that the trial court was clearly wrong in finding that the bridge constructed near the northernmost Boagni tract provided no access to the remaining 88.318 acres of Mrs. Walter’s property. We find that DOTD’s argument is without merit.
The bridge provides an access height of approximately 14 feet over an old logging road. The road is in a very low-lying area and subject to frequent flooding. If and when the road could be used overlooks the legal problems concerning its use. The defendant has no legal servitude over the logging road and has no legal servitude over the five Boagni properties to the north of her property. The existing legal servi-tudes, which at the time of the taking provided the defendant unrestricted access to her property, were severed by the 1-49 right of way.
We find no error in the trial court’s finding that the defendant was damaged by the severance of the legal access to her property and that the existence of the 1-49 bridge did not alter the situation.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiff-appellant, State of Louisiana, Department of Transportation and Development.
AFFIRMED.